**Sil EVANS, Appellee,**

v.

**George WRIGHT, Appellant.**

**No. 73–2404.**

United States Court of Appeals,
Fourth Circuit.

Argued July 22, 1974.

Decided Nov. 4, 1974.

---

1. Also, United States v. Trejo, 501 F.2d 138 (9th Cir. June 10, 1974).

Robert T. Winston, Jr., Norton, Va., for appellant.

Hugh P. Cline, Norton, Va. (Cline, McAfee, Adkins & Gillenwater, Norton, Va., on brief), for appellee.

Before CRAVEN, BUTZNER and FIELD, Circuit Judges.

CRAVEN, Circuit Judge:

Primarily this appeal questions the extent of the power of a federal trial judge to comment on the evidence in the course of his charge to the jury. In order to understand what we hold it will be necessary to paraphrase much of the evidence. For just as jury instructions must always "be drawn with reference to the particular facts of the case on trial," Collazo v. United States, 90 U.S. App.D.C. 241, 196 F.2d 573, 578, cert. denied, 343 U.S. 968, 72 S.Ct. 1065, 96 L.Ed. 1364 (1952), so also we cannot in-

telligently review an instruction in the abstract. Although exercising his power to perhaps its outer limit, we think the able trial judge below did not invade the province of the jury as understood in the federal system, and we therefore affirm.

### I.

Appellant George Wright and appellee Sil Evans engaged in the coal mining business in the corporate form of Kentucky Mason Coal Company. Evans was front man and apparently chief operator, and Wright put up most if not all of the corporate capital. When things did not go well, Wright resorted to self-help by writing a check on the corporation in the amount of $115,000 to get part of his investment out. Not surprisingly this led to a lawsuit (with which we are concerned only as background), which resulted in a settlement agreement entered into on April 24, 1971, that divided the assets of Kentucky Mason between the two parties. One of the provisions of the agreement provided that Wright and Evans would divide equally any corporate tax refund that might be received by Kentucky Mason subsequent to the date of the agreement. Early in 1972 Wright received $13,607.01 in refund of 1971 federal and state taxes paid by Kentucky Mason. Although agreeing that he owed Evans half of this amount ($6,803.51), Wright nevertheless refused to divide the funds on the ground that he was entitled to deduct from Evans' one-half share the sum of $2,575 that Evans had received from Kentucky Mason some nine days prior to the April 24 settlement agreement. Wright admitted that he had learned of Evans' receiving the $2,575 early in May 1971, shortly after the settlement agreement, and thus had known of it for at least 13 months without ever mentioning it, much less protesting it, to anybody. Evans' excuse for paying himself the

$2,575 was that he had previously turned over to the corporation by depositing it to a corporate account known as "Kentucky Mason No. 2," $5,000 of his dividend income and $215 additional personal funds.[1] That he had done so was apparently not in dispute and is supported by corporate records. Indeed, Evans added to his tax refund claim a second claim for the $5,215 he had given the company.

The case thus went to the jury in this posture: George Wright unquestionably owed Sil Evans one-half of the tax refund ($6,803.51) unless (1) Wright was entitled to set off against Evans' share the sum of $2,575 that Evans had paid himself out of corporate funds, or unless (2) Wright owed Evans not only one half of the tax refund but also the $5,215 contributed by Evans for corporate purposes. The jury returned a verdict in Evans' favor for one-half the tax refund, but denied both Evans' additional claim for $5,215 and Wright's setoff. Wright claims on appeal that the trial judge unfairly prejudiced his claim to a setoff by impermissible commentary on the evidence during his charge to the jury.

### II.

We begin our consideration of Wright's contention with the premise that a United States district judge is not a bump on a log. Nor is he a referee at a prize fight. He is, instead, the governor of the trial with the power of the common law judge to implement justice. And this power extends to his charge to the jury. As stated in the leading case Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933):

In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, *to as-*

---

1. Evans used the $2,575 received from Kentucky Mason to pay his personal taxes. He testified at trial that he felt justified in doing so because his personal taxes had increased as a result of the $5,000 dividend, *all* of which he had plowed back into Kentucky Mason.

*sist the jury in arriving at a just conclusion* by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important, *and he may express his opinion upon the facts*, provided he makes it clear to the jury that all matters of fact are submitted to their determination. [Emphasis added]

*See also* Capital Traction Co. v. Hof, 174 U.S. 1, 13–14, 19 S.Ct. 580, 43 L.Ed. 873 (1899). In this tradition Rule 105 of the Proposed Rules of Evidence for United States Courts and Magistrates states the prerogative in clear terms:

> After the close of the evidence and arguments of counsel, the judge may fairly and impartially sum up the evidence and *comment to the jury upon the weight of the evidence and the credibility of the witnesses*, if he also instructs the jury that they are to determine for themselves the weight of the evidence and the credit to be given to the witnesses and that they are not bound by the judge's summation or comment. [Emphasis added]

The principle has now been recognized by the treatises:

> The rule that the trial court is not permitted in its charge to the jury to invade the province of the jury to determine the facts at issue in the case does not preclude the trial judge from expression of opinion as to the facts. The general rule of the common-law practice is that the trial judge in summing up is not forbidden to express an opinion upon the facts; it is deemed that he can be of aid to the jury in expressing an opinion upon the reasonable inferences to be drawn from the evidence. The only limitations which the common law imposes upon the trial judge in the matter of expressing his opinion with reference

to the merits of the case is that he should make it clear to the jury that they are not bound by his opinion, and that their decision upon the facts is exclusively for them.

74 Am.Jur.2d Trial § 657 (1974).

> Under the Federal Constitution, the essential prerogatives of the trial judge as they were secured by the rules of the common law are maintained in the federal courts. Hence, in the federal courts, the judge, in submitting a case to the jury, may, at his discretion whenever he thinks it necessary to assist them in arriving at a just conclusion, comment upon the evidence, call their attention to parts of it which he thinks important, and express his opinion upon the facts, provided all matters of fact are ultimately submitted to the determination of the jury, and they are given to understand that they are not bound by such opinion.

*Id.* § 658.[2]

 Of course, the district judge's power of summary and comment is not unbounded. As stated in *Quercia*, 289 U.S. at 470, 53 S.Ct. at 699 (citations omitted):

> This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. . . . This Court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence "should be so given

2. Unlike the United States district judge, the trial judges in many of our states are forbidden, often by statute, from all summary of and comment on the evidence. The federal judge's power is more akin to that of an English judge in the common law courts, who often undertook to condense all evidence presented into a manageable package for the jury, and even to give them his strong opinions on parts of it. *See* Myers v. George, 271 F.2d 168, 172 (8th Cir. 1959); Wright, The Invasion of Jury: Temperature of the War, 27 Temple L.Q. 137 (1953).

as not to mislead, and especially that it should not be one-sided;" that "deductions and theories not warranted by the evidence should be studiously avoided."

And the judge below conformed to these constraints. In a charge remarkably free of confusing "boilerplate abstractions," United States v. Lozaw, 427 F.2d 911, 916 (2d Cir. 1970), the able trial judge in this case began by saying that the members of the jury were the triers of fact, that the jury should not infer from rulings on the evidence or any admonishment given to attorneys that the court was "for or against any party to this suit," that the jury were "the sole judges of the credibility of the witnesses and the weight of the evidence," and that it was within their province to give "the testimony of each witness such credibility as you may think it deserves."

Then the trial judge got "to the cause of action" and very clearly and concisely applied the law to the facts as the jury should find them to be. *See* United States v. Holley, 502 F.2d 273 (4th Cir. 1974). Helpfully, he directed their attention to what he termed "essentially three matters to be considered by you in this case." He noted that the contract called for a division of any tax refund, and that Wright had admitted that he owed Evans $6,803.51 as his one-half share. He then took up Evans' contention that he was entitled not only to his one-half of the tax refund but also to $5,215 which he had deposited to the account of Kentucky Mason Mine No. 2 for corporate purposes. The judge noted that the settlement agreement provided that the obligations of Mine No. 2 were to be expressly assumed by Evans. It was then that he "commented upon the evidence," and exactly what he said is quoted in the margin.[3]

The trial judge thereupon directed the attention of the jury to Wright's claim for a setoff of the $2,575 which Evans had paid himself out of corporate funds. He noted that Wright knew of the check soon after the execution of the settlement agreement and certainly by May 1971, and yet never mentioned the claimed setoff until a year later and several months after the books of the company were closed out by a certified public accountant.[4]

Then the judge again commented on the evidence as fully set out in the margin.[5] It is to this commentary that Wright takes exception.

3. Since this money was deposited to the account of Mine No. 2 by the plaintiff, it seems more likely that this was in contemplation of the parties, and especially of the plaintiff, at the time the agreement of April 24th was entered into, and I comment on the evidence in this matter to say that I think you should find that the plaintiff should not receive any judgment against the defendant for the extra sum of $5,215, although the weight and sufficiency of the evidence and the intent of the parties when they signed the agreement are being submitted to the jury for your consideration, including this question. I do not direct a verdict on this point; I suggest what I think you should do. You are not bound by my suggestion.

4. The judge said to the jury on the matter of the closeout:
I particularly note that neither party objected to the debits and credits in closing out of the books by Mr. Maness [the CPA] and neither item of $5,215 nor

$2,575 was testified about by Mr. Maness, or even brought to his attention when he made the distribution so far as we know. Neither counsel objected to or requested any modification of this narration of the evidence, although they were afforded the opportunity to do so under Rule 51.

5. I recite this evidence to show you why I consider the claim of Mr. Wright for the $2,575 credit with almost the same degree of doubt I consider the $5,215 extra claim of Mr. Evans. I charge you that in my opinion the weight of the evidence does not support the allowance of the $2,575 credit, but, as I have told you concerning the $5,215 claim, the weight and sufficiency of the evidence and the credibility of the witnesses are for the jury, and I leave this matter to you and do not direct a verdict on it, although in my opinion the $2,575 setoff ought not to be allowed.
To sum it up, it seems to me that both the $5,215 additional claim of the plaintiff Evans and the $2,575 setoff claim of the

There can be no reasonable contention on this charge that the trial judge was biased in favor of one party or prejudiced against the other. With fair indifference he expressed his opinion against the validity of *both* Wright's setoff *and* Evans' $5,215 claim. Nor did he comment on credibility. He did not suggest to the jury that Wright was lying and Evans telling the truth or vice versa. Indeed, the facts were really not in dispute. Everyone agreed that the settlement agreement had been executed by the parties, that not long before execution of that agreement Evans had first contributed $5,215 to the corporation for corporate purposes and then paid himself $2,575 out of corporate funds, and that Wright had learned of Evans' receiving corporate funds not long after the agreement was signed yet had remained silent about it for a year. Thus the credibility of witnesses could not have been an issue.

Although there is substantial authority that is even more permissive, we are inclined to think that ordinarily a district judge should not express an opinion on an *ultimate issue* in a jury trial, *e. g.*, instruct that negligence has been proved, Travelers Ins. Co. v. Ryan, 416 F.2d 362 (5th Cir. 1969); Trezza v. Dame, 370 F.2d 1006 (5th Cir. 1967), and that his

doing so may amount to a directed verdict, Nunley v. Pettway Oil Co., 346 F. 2d 95, 99 (6th Cir. 1965). *But cf.* Doyle v. Union Pac. Ry., 147 U.S. 413, 422–430, 13 S.Ct. 333, 37 L.Ed. 223 (1893); United States v. Philadelphia & Reading R. R., 123 U.S. 113, 8 S.Ct. 77, 31 L.Ed. 138 (1887); Tipton v. Socony Mobil Oil Co., 315 F.2d 660, 661–662 (5th Cir.), rev'd per curiam on other grounds, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963). But that is not what we have here. In this case the district judge's comments amounted, we think, to no more than fairly assisting the jury in interpreting the April 24, 1971, settlement agreement. The basic question was whether that agreement took into account and wiped out both Evans' additional claim for $5,215 and Wright's setoff claim.[6] The judge simply instructed that in his opinion the settlement agreement embraced these two claims as well as all others. Ordinarily the interpretation of a contract is for the court and not for the jury, *see* 75 Am.Jur.2d Trial §§ 408, 410 (1974), and here any questions for the jury were inseparable from the terms of the settlement contract itself.[7] In this context we hold that the judge's commentary, if error at all, was harmless, and that substantial justice does not require a reversal and remand for a

defendant Wright are afterthoughts and have been brought up to bolster their respective sides in this litigation.

I say to you that is my opinion, that you should give a verdict for half of the tax, which is $6,803.51 and should not allow the additional claim of Mr. Wright in the amount of $5,215 of Mr. Evans (sic) and should not allow the $2,575 setoff of Mr. Wright. But other than the tax, which I tell you you must return, the two other claims I am leaving to your consideration. You would not have to follow my suggestions or my recommendations to you.

6. The settlement agreement included the following clause:

Also heretofore in the past each of the parties have (sic) had numerous dealings with each other and with the corporation and the corporation had numerous dealings with the parties and in consideration of these premises it is hereby expressly agreed that this agreement is a complete settlement among Sil Evans, George

Wright and Kentucky Mason Coal Company, Inc. and that by the execution of the terms hereinabove stated that a complete accord and satisfaction will have been perfected and neither of the parties shall be indebted to the other in any way whatsoever.

On its face, this clause would appear to bar both Evans' $5,215 claim and Wright's setoff claim, since the transactions giving rise to both occurred before the date of the settlement agreement.

7. This case did not involve the possibility of fraud or duress in the execution of the settlement agreement, or circumstances in which one party to the agreement had no opportunity to learn the true facts before entering into the agreement. Had either of those possibilities been an issue, resolution would have been for the jury alone, and the judge's comments would give us considerably more difficulty. *See* 15 Am.Jur.2d Compromise and Settlement §§ 30–33 (1964).

new trial. *See* Trezza v. Dame, *supra*, 370 F.2d at 1008–1009; Employers Liab. Assur. Corp. v. Freeman, 229 F.2d 547 (10th Cir. 1955).

### III.

Wright also challenges the trial judge's sending the jury back to reconsider what Wright claims was a perfectly good verdict. The jury first returned a verdict for Evans for one half of the federal tax refund "plus interest from May 1972," the month Wright received the refund. Because the jury had by oversight failed to consider the *state* tax refund, the judge sent it back with instructions to add Evans' share of that refund to its verdict. No one questions the propriety of that action. On its return, however, the jury's verdict—though correctly including Evans' shares of both federal and state refunds—contained the phrase "plus interest until paid." The judge noted to the jury the discrepancy between its two verdicts on the matter of interest, and the fact that under its second verdict interest would start from the date of judgment, *i. e.,* September 21, 1973. Stating that "I don't know what you intend," the judge sent the jury out again to consider whether they wanted to state a date for interest to start. He also told the jurors they could leave the verdict as it was if they wished, that it was entirely up to them. The jury retired, and four minutes later returned a verdict stating that interest was to begin May 1, 1972.

Wright objects to the judge's sending the jury out to consider the interest point, because the jury's addition of a date cost him over a year's additional interest. He argues that the judge exceeded his authority in sending the jury out again, since its second verdict, silent as to the date for the start of interest, was unambiguous and perfectly proper.

We see no merit in this argument. While the jury's second verdict was on its face unambiguous, we agree with the trial judge that it was rather puzzling. There was no explanation for dropping the starting date for interest which had

been in the first verdict. In this context it was natural for the trial judge to wonder whether the jury had intended to omit reference to a starting date, or whether instead the jurors had simply overlooked that matter in revising their verdict. His comments did no more than express his puzzlement and offer them an opportunity to correct their oversight if indeed that was what it was. He did not in any way suggest to them what to do. Furthermore, it took the jury only four minutes to add the starting date for interest; this strongly suggests that its omission had indeed been an oversight. We hold that sending the jury out again, while not required for a valid verdict, was within the sound discretion of the district judge. *Cf.* 53 Am.Jur. Trial § 1099.

Affirmed.