**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank JAMES, Defendant-Appellant.**

**No. 77–1388.**

United States Court of Appeals,
Ninth Circuit.

May 12, 1978.

---

Eugene C. Andres (argued), of Aitken, Bradshaw & Andres, Santa Ana, Cal., for defendant-appellant.

Cornel J. Price, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before CHOY and WALLACE, Circuit Judges, and TURRENTINE,* District Judge.

WALLACE, Circuit Judge:

James appeals his conviction on three counts of using an instrument of interstate commerce to threaten to destroy property by means of an explosive in violation of 18 U.S.C. § 844(e). Each of James' claims of error pertains to the administration of his jury trial. We affirm.

I

On November 4, 1975, the Union Oil Company (Union) received a posted letter which purported to be from a protest group entitled "fission." The author of the letter threatened to explode a nuclear device at one of Union's properties unless Union acceded to an extortionate demand of one million dollars. The letter directed Union to take the money to a particular telephone booth on November 10 at 5:30 p. m. and to wait for further instructions.

At the appointed time, FBI Agent Truax, posing as a Union official, drove to the designated telephone booth. At 5:35 p. m., Truax received a call from the extortioner and was instructed to go to another specified telephone booth. Agent Truax drove slowly to the second booth in order to allow a group of agents to take up positions of surveillance in the vicinity of the second booth.

At 6:18 p. m., Truax received a second call from the extortioner. This call was monitored by Agent Ladd, who was in the telephone company's office. As soon as the 6:18 call began, Ladd so advised Agent Norregard who, in turn, immediately informed each of the officers involved in the surveillance by radio. This call lasted a few minutes, during which the extortioner instructed Truax to drive to the California Yacht Anchorage and to leave the car and money there. As soon as this call was terminated, Ladd so advised each of the agents.

Immediately prior to the second call, two of the agents assigned to surveillance,

* Honorable Howard B. Turrentine, United States District Judge, Southern District of California, sitting by designation.

Chamberlain and Girardi, saw James enter a public telephone booth. The agents observed that James' use of the telephone coincided precisely with Norregard's messages as to when the extortioner's call began and ended. Chamberlain then surreptitiously followed James to the California Yacht Anchorage, where James resided. James was subsequently indicted and convicted of violating 18 U.S.C. § 844(e).

II

James' first claim of error is that the district judge's failure to give a particular instruction relating to circumstantial evidence amounted to a denial of due process. We disagree.

James' specific argument is that his entire defense was dependent upon the jury's understanding of the nature and significance of circumstantial evidence, and that a promised instruction on this point was not given. His attorney's interest in an instruction on this subject was expressed during trial as follows:

COURT:

  .  .  .  Do you have any instructions you want me to give?

DEFENSE
COUNSEL:

You have the burden of proof on circumstantial evidence. In other words, if two reasonable interpretations—

COURT:

Oh, yes. In fact, I always do that. I have already done it actually and I will do it again.

---

1. The instruction reads:

You are not permitted to find the defendant guilty of [the] [any] crime charged against him based on circumstantial evidence unless the proved circumstances are not only consistent with the theory that the defendant is guilty of the crime, but cannot be reconciled with any other rational conclusion. Each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt.

Also, if the circumstantial evidence [as to any particular count] is susceptible of two reasonable interpretations, one of which

DEFENSE
COUNSEL:

If it is irreconcilable with any other rational conclusion.

From these sparse comments, and having made no written offer of a jury instruction, he now asserts that there was a proper request for an instruction apparently given in California state courts.[1] James then claims that when the district judge responded, "I always do that," he was misled into relying upon that instruction in his argument to the jury.

His argument fails for several reasons. It can hardly be said that an adequate request was made for the specific instruction James now claims was intended. Moreover, there is substantial question whether a proper objection was ever made to the circumstantial evidence instructions that were given. *See* Fed.R.Crim.P. 30.

■ Even if we assume that proper objection was made and that substitute instructions were adequately requested, it would avail James nothing because the instructions given were clearly adequate.

■ We review a claim of error relating to jury instructions from a unique vantage point. First, neither party, including a criminal defendant, may insist upon any particular language. *United States v. Pallan*, 571 F.2d 497 (9th Cir. 1978). On the contrary, the trial judge is given substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented. *United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir. 1977); *United States v. Davis*, 564 F.2d 840, 846 n.6

points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt. If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable. The Committee on Standard Jury Instructions, Criminal, of the Superior Court of Los Angeles County, California, California Jury Instructions—Criminal No. 2.01, at 31 (3d ed. Supp. 1976).

(9th Cir. 1977); *United States v. Thompson*, 559 F.2d 552, 553 (9th Cir. 1977); *United States v. Garcia-Rodriguez*, 558 F.2d 956, 965–66 (9th Cir. 1977). Equally important, the propriety of a given instruction, or the failure to give a particular instruction, is not reviewed in the abstract; rather, the adequacy of the entire charge taken in the context of the whole trial is our proper scope of inquiry. *United States v. Park*, 421 U.S. 658, 674–75, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); *United States v. Silla*, 555 F.2d 703, 706 (9th Cir. 1977); *United States v. Kaplan*, 554 F.2d 958, 968 (9th Cir. 1977). Finally, although a criminal defendant is entitled to an instruction regarding his theory of the case, *United States v. Kaplan, supra*, 554 F.2d at 968, challenges which merely pertain to the trial judge's language or formulation of the charge are reversible only for an abuse of discretion. *See United States v. Park, supra*, 421 U.S. at 675, 95 S.Ct. 1903; *United States v. Bayer*, 331 U.S. 532, 536–37, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947).

Viewing the jury's charge in light of these principles, we conclude that James'

contention is without merit. The district judge instructed the jury on the meaning and significance of direct and circumstantial evidence.[2] In addition, the jury was instructed as to their duty in the event they concluded that the evidence reasonably permitted a finding of either guilt or innocence.[3] Considering these instructions in light of the charge and record as a whole, we believe that the substance of James' desired instruction was more than adequately given. In addition, the formulation of the charge chosen by the trial court was certainly not an abuse of discretion,[4] and our review of his attorney's argument does not demonstrate the prejudice he claims.

### III

James' second contention is that certain comments by the district judge impermissibly invaded the jury's province. James points specifically to two passages from the record where the district judge seems to indicate that the elements of the offenses had been established.[5] These comments, ar-

---

**2.** The jury was instructed:

There are two types of evidence from which a jury may properly find a defendant guilty of crime. One is direct evidence, which means the testimony of an eyewitness, and the other is circumstantial evidence, which means the proof of a chain of circumstances pointing to the commission of an offense. In a case such as this the law makes no distinction between direct and circumstantial evidence but simply requires that, as I said, before convicting a defendant the jury must be satisfied of his guilt beyond a reasonable doubt from all the evidence.

**3.** The jury was instructed:

So a reasonable doubt exists whenever, after careful and impartial consideration of all the evidence, the jurors do not feel convinced to a moral certainty that a defendant is guilty of the charge. And so, if you view the evidence in this case as reasonably permitting either of two conclusions, one pointing to innocence and the other pointing to guilt, you must necessarily adopt the conclusion pointing to innocence, because so long as that is a reasonable conclusion and it exists, it would be impossible to find guilt beyond a reasonable doubt, because the very existence of a reasonable alternative on the other side would preclude you from finding guilt beyond a reasonable doubt.

The similarity between this instruction and the one James claims was erroneously excluded is striking. *See* note 1, *supra*.

**4.** James also contends that the jury was inadequately instructed on the question of intent. We have carefully reviewed the record and find no error here.

**5.** James relied primarily upon the following passage from the judge's charge:

So, if you find that—it seems to me that if you find beyond a reasonable doubt that Mr. James was the person who made the telephone calls, it seems to me that you could conclude that the offense was committed because the letter—the telephone calls referred to the letter, and the letter certainly contained a threat, and you could find, it seems to me, beyond a reasonable doubt that the telephone calls did—you will recall in the third call there was talk about, "You are at ground zero," and it implies the knowledge that he expects the money to be in the car and so on. So the real question for you is the identity of the person who committed the act.

In the second passage to which James objects, the judge merely indicated that, in his view, because of the interrelated nature of these counts, a finding of guilt as to one count would logically imply guilt as to the others. The judge concluded this thought as follows:

gues James, exceeded the court's prerogative of fair comment. We disagree.

■ As Mr. Justice Frankfurter tersely observed, "[f]ederal judges are not referees at prize-fights but functionaries of justice." *Johnson v. United States*, 333 U.S. 46, 54, 68 S.Ct. 391, 395, 92 L.Ed. 468 (1948). The broader import of this maxim, with respect to the trial court, is that a United States district judge assumes the traditional role and "function of the trial judge at common law . . . ." *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933). Accordingly,

> [i]n a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination.

*Id.* (citation omitted). *Accord, Evans v. Wright*, 505 F.2d 287, 289–93 (4th Cir. 1974); *Davis v. Craven*, 485 F.2d 1138, 1140–42 (9th Cir. 1973), *cert. denied*, 417 U.S. 933, 94 S.Ct. 2645, 41 L.Ed.2d 236 (1974); *United States v. Carlos*, 478 F.2d 377, 379 (9th Cir. 1973).[6]

■ It is clear, however, that the trial judge's authority in commenting upon the evidence is not boundless. *Quercia v. United States, supra*, 289 U.S. at 470–72, 53 S.Ct. 698. Therefore, the bottom-line question in cases such as the one before us is whether the judge has made "it clear to the jury that all matters of fact are submitted to their determination." *Id.* at 469, 53 S.Ct. at 699. Our review of the record leads us to conclude that the judge's comments did not "leave the jury with the impression that they [were] not free to perform their traditional fact-finding function . . . ." *United States v. Carlos, supra*, 478 F.2d at 379.

■ It was not impermissible for the trial judge to indicate that he saw little dispute over whether the elements of the offenses were established. In fact, James' counsel offered little evidence to negate this showing. As the judge observed, the central dispute was over the identity of the threatener, not whether the threats had been committed.[7] In our view, the judge

---

> But that is up to you. That is up to you.
> In any event, in order to find him guilty of any count you must be convinced beyond a reasonable doubt of such guilt.

We find no error here.

**6.** This principle has been recognized in Anglo-American jurisprudence for centuries. *See, e. g.,* M. Hale, The History of the Common Law of England 164–65 (ed. Gray 1971) (adapted from Hale's *History of the Common Law,* originally published in 1713) and 3 W. Blackstone, Commentaries *375.

**7.** James' counsel agreed with this characterization of the case by the trial judge in a discussion regarding jury instructions:

> COURT:
>> Well, the question is: Is this the man that sent the letter and made the calls? That is about the size of it. There is no doubt but that somebody intentionally did something.
>
> .     .     .     .     .
>
>> The elements: The act of making a threat; the use of mail or telephone in

doing such act. The only question here is the matter of identity, isn't it?
> PROSECUTOR:
>> It is, your Honor.
> COURT:
>> All right.
> PROSECUTOR:
>> At least I feel it clearly is, but that may not be—
> COURT:
>> Isn't that so?
> DEFENSE COUNSEL:
>> I think for the most part, sure.
> COURT:
>> That can shorten the instructions a good bit. Was it the defendant that did these acts?

In addition, in his argument James' attorney made no effort to rebut the government's case relating to the elements of the offense. On the contrary, the argument related exclusively to the identity of the extortioner.

was merely fulfilling his historic role of giving the jury "Assistance by . . . observing where the Question and Knot of the Business lies . . . ."[8]

The district judge also expressly instructed the jury that it would be the final arbiter of all questions of fact, particularly the guilt or innocence of James. The judge stated:

I don't know that I have commented on the evidence. I have made mention of the evidence but not in any manner for the purpose of suggesting to you whether or not I think Mr. James is guilty. If you think you detected any such suggestion from my comments, you are at liberty to disregard them. Yours is the job to find the facts, and any view that I might have with respect to the guilt or innocence of Mr. James is something that I have in no manner tried to convey to you, and it is altogether beside the point. Yours is the job of making that determination.

While such an instruction does not end the inquiry, it is a significant consideration in our determination that the jury's province was not invaded. See United States v. Carlos, supra, 478 F.2d at 379.

## IV

James' final[9] claim of error relates to the testimony of FBI Agent Chamberlain who was observing a telephone booth in the vicinity of the booth where Truax received the second call. Chamberlain testified that he observed James enter the telephone booth at 6:17 p. m. and within a few seconds Chamberlain received a radio message from Agent Ladd stating that the extortioner's second call had commenced. Chamberlain then testified that some two minutes later James left the telephone booth at the same time Chamberlain received another message from Ladd stating that the extortioner's call had terminated.

James' counsel timely objected to Chamberlain's testimony on the basis of hearsay. In response to the objection, the district judge admitted the evidence for the limited purpose of proving that Chamberlain received messages stating that the extortioner's call had begun and ended.

The essence of James' argument is that Chamberlain's testimony was relevant only for the purpose of proving the precise coincidence of the extortioner's call and the call made by James. Therefore, reasons James, Chamberlain's testimony was used to show not only the fact that Chamberlain had received the messages, but also the truth of the messages' content—that the extortioner's call had in fact just begun and ended.

James' argument misses the mark. Agent Chamberlain's testimony as to the content of the radio messages was admitted solely for the nonhearsay purpose of proving that the messages he received were those sent by Agent Ladd. The content of the messages was independently proved by the testimony of Ladd that he personally monitored the extortioner's call and that the radio broadcasts were made at the precise start and conclusion of the call. In addition, Ladd testified that the first message was given at 6:18 p. m.

We therefore conclude that there was independent, nonhearsay evidence which proved (1) that the radio messages were made precisely at the beginning and end of the extortioner's call, (2) that Chamberlain received these messages, and (3) that Chamberlain observed James enter and leave the telephone booth at the same time the messages were received. Clearly, the reasonable inference to be drawn from these independently proved facts was that the call made by James coincided precisely with that of the extortioner. Thus, Chamberlain's testimony was neither admitted nor used for hearsay purposes.[10]

AFFIRMED.

---

8. M. Hale, supra, note 6, at 165.

9. James also contends that certain questions asked by the prosecutor constituted miscon-

duct and require a reversal. This claim is frivolous.

10. The government argues that Chamberlain's testimony was proof of a "verbal act" and was

admissible on this basis. The messages received by Chamberlain, however, were not verbal acts as that term is used in the law of evidence. *See United States v. Calaway,* 524 F.2d 609, 613 n.1 (9th Cir. 1975); *see generally* McCormick, Law of Evidence § 249 (2d ed. E. Cleary 1972); 6 J. Wigmore, Evidence § 1772 (1976).