839 F.2d 1020
 UNITED STATES of America, Plaintiff-Appellee,
v.
Reinaldo LOZANO, a/k/a Ray, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appelee,
v.
Edwin W. EMERSON, a/k/a Ed, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Elmo COWDEN, Jr., a/k/a J.R., Defendant-Appellant.
 Nos. 87-5029 to 87-5031.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 4, 1987.
Decided Feb. 22, 1988.
 
 Stephen Jon Cribari, Deputy Federal Public Defender (Fred W. Bennett, Federal Public Defender, Baltimore, Md., Joseph V. Smith, Third-Year Law Student, on brief), Stephen Foster Forbes, Hampton, Va. (John W. Drescher, Lyle, Siegel, Drescher & Croshaw, Virginia Beach, Va., on brief), for defendants-appellants.
 Robert Edward Bradenham, II, Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.
 Before WIDENER, HALL and WILKINS, Circuit Judges.
 WILKINS, Circuit Judge:
 
 
 1
 Reinaldo Lozano, Edwin W. Emerson and Elmo Cowden, Jr. appeal their convictions on drug-related offenses. We affirm.
 
 I.
 
 2
 The key witness for the government was Charles Burnette, an admitted cocaine dealer who testified pursuant to a plea agreement about his cocaine operation in Virginia. While facts were in dispute and testimony in conflict, we are required to view the evidence adduced at trial in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Adhering to this principle, Burnette's testimony shows that he began purchasing cocaine in 1982 from Lozano in Miami, Florida. From 1983 to 1985, he made 13 trips to Miami, purchasing a total of more than 60 kilograms of cocaine from Lozano.
 
 
 3
 Burnette operated this cocaine business in partnership with other individuals. After the dissolution of a partnership with Wayne Bergquist in 1982, Burnette continued the cocaine operation in partnership with Cowden. When Cowden ceased his drug activities in 1983, the business continued with another partner, Gardner Crisp, until Burnette was arrested in December 1985. During Cowden's participation in the cocaine operation, the drugs were prepared for distribution and stored at his home in Virginia.
 
 
 4
 Emerson purchased one kilogram of cocaine from Burnette in January 1985 and another in March 1985. The January transaction occurred at Burnette's home and the March purchase took place at a motel.
 
 
 5
 In October 1986 Lozano, Emerson and Cowden were indicted for conspiracy to possess cocaine with intent to distribute and conspiracy to distribute cocaine. 21 U.S.C.A. Sec. 846 (West 1981). Lozano was charged separately with violation of the Travel Act, 18 U.S.C.A. Sec. 1952 (West 1984 & Supp.1987), and use of a communications facility to facilitate a drug offense, 21 U.S.C.A. Sec. 843(b) (West 1981). Cowden and Emerson each were charged with two counts of possession of cocaine with intent to distribute, 21 U.S.C.A. Sec. 841(a)(1) (West 1981 & Supp.1987). Lozano and Cowden were convicted on all counts. Emerson was acquitted of conspiracy, but convicted on the substantive possession counts.
 
 II.
 
 6
 Lozano was charged in the Travel Act count with traveling on March 16, 1984 from Miami, Florida to Isle of Wight County, Virginia with the intent to facilitate the distribution of cocaine and thereafter engaging in activity to facilitate the distribution of cocaine. It is undisputed that Lozano made the trip. However, he contends that there was insufficient evidence to prove the requisite nexus between the trip and the distribution of cocaine.
 
 
 7
 To obtain this conviction under the Travel Act, the government was required to prove that interstate travel was connected to the cocaine conspiracy. The government was not required to prove that the trip was essential to the conspiracy, only that the trip facilitated it. United States v. LeFaivre, 507 F.2d 1288, 1296-97 (4th Cir.1974), cert. denied, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975); United States v. Perrin, 580 F.2d 730, 736 (5th Cir.1978), aff'd on other grounds, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). The evidence clearly established the nexus element beyond a reasonable doubt. Burnette testified that the week before the trip, he called Lozano to complain about several kilograms of cocaine which smelled of kerosene. Lozano told Burnette that he would meet with him and "take care of it." Burnette next heard from Lozano when Lozano telephoned him upon his arrival in Virginia from Florida. Lozano spent the weekend in Virginia, during which Burnette paid him $10,000.00, inferably for a prior cocaine purchase.
 
 III.
 
 8
 In charging a violation of section 843(b), the government alleged that Lozano used a telephone on March 16, 1984 to facilitate the distribution of cocaine. Although Lozano does not deny that he made a telephone call to Burnette upon his arrival in Virginia, he contends that there was no evidence of any discussion of illegal activity during the call. To prove the facilitation element of a section 843(b) violation, the government must establish that "the telephone call comes within the common meaning of facilitate--'to make easier' or less difficult, or to assist or aid." United States v. Phillips, 664 F.2d 971, 1032 (5th Cir.1981), cert. denied, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). Facilitation was proven by evidence that Lozano made the call announcing his arrival in Virginia to handle the problem concerning the tainted cocaine.
 
 IV.
 
 9
 In the conspiracy count, the government alleged that the conspiracy existed from January 1, 1982 through January 1, 1986. Cowden challenges his conspiracy conviction, asserting that the evidence at trial proved multiple conspiracies since Burnette had other partners before and after Cowden's involvement.
 
 
 10
 Whether the evidence establishes a single conspiracy or multiple conspiracies is an issue for the jury. United States v. Urbanik, 801 F.2d 692, 695 (4th Cir.1986). "If the jury is properly instructed, the finding of a single conspiracy must stand unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find." Id. Here, there was no objection to the jury instructions. And, despite the shifting membership of those involved in the conspiracy, there was sufficient evidence of one general business venture. United States v. McGrath, 613 F.2d 361, 367 (2d Cir.1979), cert. denied, 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980). Cowden also asserts pro se that he withdrew from the conspiracy in 1983. However, his claim of withdrawal was not supported by any evidence that he "acted to defeat or disavow the purposes of the conspiracy." Urbanik, 801 F.2d at 697.
 
 V.
 
 11
 Emerson challenges the sufficiency of the evidence to support his possession convictions, asserting that the testimony of Burnette was not credible. He also contends that he should have received a separate trial since he was acquitted on the conspiracy charge. Regardless of Burnette's credibility, Emerson's two purchases, which were the predicate for the possession with intent to distribute charges, clearly were established by testimony of Burnette's wife, his brother, and his bookkeeper. There was sufficient evidence to support the convictions and no prejudice resulted from the joint trial.
 
 VI.
 
 12
 To establish Burnette's trips to Miami, the government presented hotel records which contained an entry for a Mr. C. Burnette of 21 Royal Palm, Boca Raton, Florida on July 3-6, 1986. Prior to trial it was agreed by all parties that this entry did not refer to the witness Charles Burnette, since he was in custody at the time. All parties consented to this entry being redacted. While redacted at one place in the records, the entry was inadvertently left at another place in the records which were submitted to the jury.
 
 
 13
 During deliberations, the jury sent a note to the court questioning whether Burnette was in custody or at the hotel in July 1986. The trial judge instructed the jury that it would be improper for him to make a determination of the facts and he attempted to give them guidance in resolving the conflicting evidence. Ultimately, he told them to search their own memories of the evidence and to make a determination based on their understanding of the facts presented.
 
 
 14
 Defendants contend that the supplemental jury instructions were an improper comment on the evidence. We find no abuse of discretion. It is within the province of the trial court "to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence." Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed.2d 1321 (1933), quoted in United States v. Tello, 707 F.2d 85, 88 (4th Cir.1983). Here, the trial court's response to the jury's question was a cautious exercise of his discretion, for he could have instructed the jury to disregard the entry which indisputably pertained to someone else. See Evans v. Wright, 505 F.2d 287 (4th Cir.1974).
 
 
 15
 AFFIRMED.