**Michael Jerome POWELL, Petitioner–Appellant,**

v.

**George M. GALAZA, Warden, Respondent–Appellee.**

**No. 01–15195.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 2001.

Filed March 4, 2002.

---

Alexandra McClure, Assistant Federal Public Defender, San Francisco, CA, for the petitioner-appellant.

John R. Vance, Jr., Deputy Attorney General, San Francisco, CA, for the respondent-appellee.

Before: B. FLETCHER, BOOCHEVER and FISHER, Circuit Judges.

FISHER, Circuit Judge.

In the middle of Michael Jerome Powell's trial for failure to appear at a sentencing hearing, the trial court instructed the jury that Powell's own testimony satisfied the specific intent element of the crime. Such an instruction is impermissible under the principles of *Carella v. California,* 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989), and *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and the reasoning of *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), dictates that harmless error review is inapplicable. Because the California Court of Appeal failed to apply, or even cite, the proper controlling Supreme Court authority, we reverse the district court's denial of the petition for writ of habeas corpus.

**Factual and Procedural Background**

Michael Jerome Powell is serving a sentence of 29 years to life in prison for failing to appear at a sentencing hearing. Having

pled guilty to possession of cocaine with intent to sell, Powell faced a maximum jail term of four years. Powell testified that, although he was willing to serve his prison sentence, he skipped his sentencing hearing because he feared he would be killed in prison.

Powell had voluntarily approached the San Francisco police in early February 1994 with information about the January 28 murder of two-year-old Bianca Robinson. Bianca had been riding in the back of a car driven by Kelly Hollimon when Emanuel Davis, in a car with two friends, shot at Holliman but killed Bianca instead. According to Powell, Davis and his friends are members of the Black Guerilla Family ("BGF"), a known gang. In a taped statement, Powell told the authorities that he had witnessed a fight between Hollimon and Davis a few days before the shooting, during which Hollimon severely injured one of Davis' friends. Powell told the homicide investigators that he believed Davis and his friends wanted to take revenge against Hollimon.

Shortly after he spoke with the authorities about Bianca's murder, Powell was arrested in Marin County for possession of cocaine with intent to sell, in violation of California Health & Safety Code § 11351.5. In late November or early December 1994, while Powell was out on bail, he reluctantly testified in the Bianca Robinson murder trial. Powell expressed concern that he might face retaliation, but he elected to testify despite his anxiety.

Powell pled guilty to his felony possession charge on November 23, 1994 and was scheduled to be sentenced on February 23, 1995, facing a maximum sentence of four years. He failed to appear, however, at his sentencing hearing. One year later, he was arrested, charged with failure to appear in violation of California Penal Code § 1320.5 and convicted by a jury. The state court sentenced him to 29 years to life in prison—four years for the underlying drug offense and 25 years to life because his failure to appear was his third-strike felony.[1]

■ Under California law, the crime of failure to appear has two elements: (1) willful failure to appear as required and (2) specific intent to evade the process of the court. Cal.Penal Code § 1320.5; *see People v. Forrester*, 30 Cal.App.4th 1697, 37 Cal.Rptr.2d 19, 21 (1994). Powell's defense was that he did not specifically intend to evade the process of the court.

At the preliminary hearing for his failure-to-appear charge, Powell's sister and wife testified that Powell received death threats in early January 1995—the number 187(the California Penal Code section for murder) appeared repeatedly on his pager and the phone number for a mortuary appeared on his pager on one occasion. Powell's sister testified that around this time (between December 1994 and March or April 1995), Powell "looked like he was afraid ... for his life," that he refused to tell her or their father where he was living and that he urged them to stay away from his father's neighborhood. Powell's wife testified that an unidentified man, screaming "something about testifying," shot at her and Powell while they were in the car. The Powells did not report any of these incidents to the police.

Prior to the jury trial for failing to appear, the court ruled that Powell could not testify about his reason for failing to appear at the sentencing hearing. The court reasoned that, because Powell was precluded from presenting a necessity defense, he should also be precluded from introducing evidence of his state of mind,

---

1. Powell contends that his sentence constitutes cruel and unusual punishment. We de-

cline to reach this issue because we vacate his conviction on another ground.

as that evidence merely "boil[ed] down to a statement of necessity."[2]

Nonetheless, on direct examination, Powell testified that he was "prepared to get four years state prison" if he pled guilty to the drug charge and that he was willing to serve that sentence. He further testified,

> The only thing I was really worried about was the BGF member that was going to kill me when I got to San Quentin. That was the only thing I was worried about. That's what we [Powell and his probation officer] discussed in full length.

The prosecution objected that this testimony violated the court's pretrial ruling, but the court permitted Powell to continue. Powell further stated, "we had been shot at and everything already, and I already knew what was coming to me while I was—you know, trying to kill me. I got scared for my life. That's the truth." Powell also testified that he was not "trying to get away from anything that . . . the court was going to do to [him]" and that he was not "trying to avoid the court's sentence." The prosecutor subjected Powell to scathing cross-examination on this subject, filling 23 transcript pages. At the end of the day's testimony, the court ad-

monished Powell and his attorney for violating the pretrial order, instructed the jury that the necessity defense was not available in this case and—in terms that are at issue here—further instructed the jury that Powell's testimony did not negate the specific intent element:

> The other thing about it is, it doesn't relate in the slightest to the subject of intent. In fact, if you look carefully and logically at what has been said here about why the defendant didn't come to court, it doesn't vindicate or eliminate the intention to evade the court process. In fact, it starts with an admission that he intended to evade the court process. So, it doesn't eliminate the mental element of this offense either. What he's saying by his repeated statements against my order is that he didn't come to court because he wanted to evade the process of the court, because he knew in all reason that he was going to be sent to prison. And that's what the element or the intentional element of this offense is about: Intent to evade the court process.

The court also forbade Powell's attorney from revisiting the issue on redirect examination or presenting any additional evidence to rehabilitate Powell.[3]

**2.** The trial court's ruling that the necessity defense was unavailable to Powell is not before us. In an unpublished opinion, the California Court of Appeal affirmed the trial court's decision to deny Powell the necessity defense. The appellate court explained that, while it was unclear whether a defendant charged with failure to appear could invoke the necessity defense in the first instance, Powell certainly could not do so because he failed to satisfy the following required elements:

> (1) [A] specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2)[N]o time for a complaint to the authorities or . . . a history of futile complaints which make any result from such complaints illusory; (3)[N]o time

or opportunity to resort to the courts . . . and (5) The [defendant] immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

(Internal quotations omitted and citing *People v. Lovercamp*, 43 Cal.App.3d 823, 118 Cal. Rptr. 110, 115 (1974) (holding that necessity is possible defense to charge of escape from prison)).

**3.** Because we vacate Powell's conviction on the ground that the trial court's midtrial instruction violated the Fourteenth Amendment, we decline to reach Powell's claim that the trial court violated his Sixth Amendment right to present a defense by refusing to allow Powell to be rehabilitated on redirect examination.

Four days later, at the end of the trial, the court further charged the jury:

> I have not intended by anything I have said or done, or by any questions that I may have asked, or by any ruling I may have made to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness.
>
> If anything I have done or said has seemed to so indicate, you will disregard it and form your own conclusion....
>
> ....
>
> Whether some instructions apply will depend upon what you find to be the facts. Disregard any instruction which applies to facts determined by you not to exist. Do not conclude that because an instruction has been given that I am expressing an opinion as to the facts.

The court also appears to have delivered an instruction defining specific intent, as well as the following instruction:

> If you find that the defendant willfully failed to appear within 14 days of his assigned appearance date, you are permitted but are not required to infer therefrom that defendant intended to evade the process of the court.

On direct review of Powell's conviction, the California Court of Appeal cursorily rejected Powell's objection that the midtrial instruction was unfair and prejudicial, stating that "Powell's evidence, including that which he was precluded from introducing, did not support a defense of necessity and did not negate the element of intent to evade the court process. It follows that no direct prejudice resulted from so informing the jury." The Court of Appeal denied Powell's petition for rehearing, and the California Supreme Court denied Powell's Petition for Review without opinion. Powell sought federal habeas relief, and the district court denied his amended petition on December 13, 2000. Powell timely appealed to this Court.

**Standard of Review**

We review de novo a district court's decision to deny a 28 U.S.C. § 2254 habeas petition. *Lockhart v. Terhune*, 250 F.3d 1223, 1228 (9th Cir.2001); *Charles v. Hickman*, 228 F.3d 981, 985 (9th Cir.2000). Because Powell's petition was filed after April 24, 1996, it is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lockhart*, 250 F.3d at 1228. Therefore, the petition may be granted only if:

> the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's decision can be 'contrary to' federal law either 1) if it fails to apply the correct controlling authority, or 2) if it applies the controlling authority to a case involving facts 'materially indistinguishable' from those in a controlling case, but nonetheless reaches a different result." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir.2000) (citing *Williams v. Taylor*, 529 U.S. 362, 405–07, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J.)), *cert. denied*, 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000). In determining whether a state court decision is contrary to federal law, we will examine the "last reasoned decision of a state court as the basis of the state court's judgment." *Packer v. Hill*, 277 F.3d 1092, 1101 (9th Cir.2002).

**Analysis**

The Supreme Court's holdings in *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989), and

*Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), provide the controlling authority here. Because the California Court of Appeal "failed to cite to any federal law, much less the controlling Supreme Court precedents"— *Carella* and *Sandstrom*—and failed to apply the correct analysis as determined by those precedents, its decision was contrary to federal law. *Packer,* 277 F.3d at 1101(also noting that state court incorrectly articulated federal law); *see also Shackleford v. Hubbard,* 234 F.3d 1072, 1077 (9th Cir.2000) ("Under the 'contrary to' clause, a federal court should grant the writ ... when the state court has failed to apply the correct controlling authority from the Supreme Court ...."), *cert. denied,* —— U.S. ——, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001). Moreover, habeas relief is warranted because the state court reached an erroneous result.[4] *See Packer,* 277 F.3d at 1102("Given our conclusion that the state court failed to apply clearly established federal law, we must now determine whether its decision constituted error ....").[5] The trial court's instruction improperly removed the element of specific intent to evade the court process—the only contested issue—from the jury's consideration and in effect commanded a directed verdict for the state. Under *Carella* and *Sandstrom,* this was error.

In *Carella,* the Supreme Court reiterated its rule that a mandatory presumption—a specific instruction that "both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts"—violates the Fourteenth Amendment because it "directly foreclose[s] independent jury consideration of whether the facts proved establish[ ] certain elements of [the charged offense] ... and relieve[s] the State of its burden of ... proving by evidence every essential element of [the] crime beyond a reasonable doubt." 491 U.S. at 265–66, 109 S.Ct. 2419(citing *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)); *accord Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (holding unconstitutional instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" because the jury could have interpreted it as either a burden-shifting or conclusive presumption).

Here, the trial court told the jury that Powell's testimony was "an admission that he intended to evade the court process," and that

> [w]hat [Powell is] saying by his repeated statements against [the court's] order is that he didn't come to court because he wanted to evade the process of the court, because he knew in all reason that he was going to be sent to prison. And that's what ... the intentional element of this offense is all about: Intent to evade the court process.

This instruction went beyond the mandatory presumption instructions found uncon-

---

4. Because we are proceeding under the "contrary to" prong, rather than the "unreasonable application" prong, it is sufficient that the state court result was erroneous, rather than clearly erroneous. *See Packer,* 277 F.3d at 1102 n. 12. In any event, we are "left with a 'definite and firm conviction' that an error has been committed." *Van Tran,* 212 F.3d at 1153.

5. The *Packer* court also considered "whether the error had a substantial or injurious effect on the verdict." *Packer,* 277 F.3d at 1102. Because we hold that harmless error review is inapplicable here, we need not determine whether the state court's error was harmless under the standard enunciated in *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

stitutional in *Carella* and *Sandstrom*. The jury was not merely instructed to find specific intent to evade the process of the court once it found certain predicate facts. Rather, the court stated that Powell's testimony "starts with an admission that he intended to evade the process of the court." Any reasonable juror easily could have understood this as an instruction that she or he was required to find the specific intent element satisfied. Moreover, the court's later instructions were inadequate to undo the damage caused by the court's earlier definitive statement. The court's qualification that "I have not intended by anything I have said or done ... to intimate or suggest what you should find to be the facts" was too general and too late to ensure that the jurors would entirely disregard the court's instruction that the only contested issue in the case should be decided against Powell. Therefore, the midtrial instruction clearly violated the principles enunciated in *Carella* and *Sandstrom*.

 We further hold that harmless error review is inapplicable. The Supreme Court has recognized that "some constitutional errors require reversal without regard to the evidence in the particular case [because] some errors necessarily render a trial fundamentally unfair." *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (stating that "harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury"), *overruled in part by Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1997) (rejecting harmless error formulation of *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). This applies on habeas review as well as on direct review. *See Conde v. Henry*, 198 F.3d 734, 741 (9th Cir.2000) (refusing to apply harmless error review in consideration of petition for writ of habeas corpus where structural errors rendered trial fundamentally unfair).

The Court in *Carella* explained that a mandatory presumption instruction can be reviewed for harmless error because it is not equivalent to a directed verdict for the state—the jury is still required to find the predicate facts underlying each element beyond a reasonable doubt. *Carella*, 491 U.S. at 266, 109 S.Ct. 2419; *see also Rose*, 478 U.S. at 579–80, 106 S.Ct. 3101 (holding that instruction that impermissibly shifts burden of proof on malice element is subject to harmless error review). The instruction here, however, is effectively the same as a directed verdict for the state, closely resembling the instructions criticized in *United States v. Johnson*, 71 F.3d 139 (4th Cir.1995), and *United States v. Goetz*, 746 F.2d 705 (11th Cir.1984), where the trial courts instructed the juries that a required element had been satisfied. *See Johnson*, 71 F.3d at 141 (trial court conclusively instructed the jury that the robbed credit union was a federally insured credit union within the meaning of the relevant statute); *Goetz*, 746 F.2d at 707–08 (trial court instructed the jury that the documents submitted by the defendants were not tax returns); *see also United Bhd. of Carpenters & Joiners of America v. United States*, 330 U.S. 395, 408–09, 67 S.Ct. 775, 91 L.Ed. 973 (1947) (reversing conspiracy convictions because trial court did not include instruction reflecting § 6 of the Norris LaGuardia Act, which limited imputed liability of officer, member or organization "participating or interested in a labor dispute," and stating that "a judge may not direct a verdict of guilty no matter how conclusive the evidence") *superseded by statute on other grounds*.

 An instruction that a particular element has been satisfied cannot be reviewed for harmless error because the wrong entity—the judge rather than the jury—becomes involved in rendering the verdict. That is, the guilty verdict cannot

be said to emanate from the jury because the judge provides a necessary step in reaching that verdict. In such circumstances, "[t]he most that an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent a constitutional error. That is not enough." *Sullivan v. Louisiana*, 508 U.S. 275, 280, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (holding that defective reasonable doubt instruction will not be reviewed for harmless error because the jury never actually rendered a guilty verdict and because instruction constituted structural error). *Cf. Conde*, 198 F.3d at 740–41 (refusing to apply harmless error analysis where failure to allow closing argument on defense theory, refusal to instruct jury on that theory and erroneous instruction combined to deprive defendant of fair trial). Because "there has been no jury verdict within the meaning of the Sixth Amendment," we refuse to review the instruction here for harmless error. *Sullivan*, 508 U.S. at 280, 113 S.Ct. 2078.

Respondent urges us to analyze the judge's midtrial instruction under *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). We believe the instruction is more appropriately analyzed under *Carella* than *Quercia*, which addressed the proper limits on a trial judge's comments to the jury. *Quercia* is distinguishable because the court here was not merely commenting on the evidence or making passing remarks during the course of the trial. Rather, as the court itself recognized, it was instructing the jury

about the specific intent element.[6] Accordingly, the trial judge's statement should be assessed under the standards employed in scrutinizing other jury instructions, and *Carella* and *Sandstrom*, rather than *Quercia*, constitute the correct controlling authority. In any event, the result is also erroneous under *Quercia* and its progeny.

In *Quercia*, after the trial court charged the jury, it stated:

And now I am going to tell you what I think of the defendant's testimony. You may have noticed, Mr. Foreman and gentleman, that he wiped his hands during his testimony. It is a rather curious thing, but that is almost always an indication of lying. . . . I think that every single word that man said, except when he agreed with the Government's testimony, was a lie.

Now, that opinion is an opinion of evidence and is not binding on you, and if you don't agree with it, it is your duty to find him not guilty.

*Id.* at 468–469, 53 S.Ct. 698. The Supreme Court stated that a trial judge "may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination." *Id.* at 469, 53 S.Ct. 698. The Court reversed the defendant's conviction because the trial judge added to the evidence and "put his own experience, with all the weight that could be attached to it, in the scale against the accused." *Id.* at 471, 53 S.Ct. 698. Moreover, the Court rejected the argument that the latter portion of the statement cured the error, because the judge did not withdraw his opin-

---

**6.** Immediately prior to issuing the contested instruction, the court suggested that "maybe in the process of hoisting[Powell and his attorney] on their own Pitards I would contemplate the possibility of instructing the jury on necessity and on the issues of the question of intent at this juncture so they don't go home

with some misimpression of what's going on here." After the prosecutor agreed, the judge directed that the jury be brought back in so that he could "instruct them." As the court itself characterized what it was about to do as an instruction, we decline to assess the language as mere comment.

ion and it was "of a sort most likely to remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." *Id.* at 472, 53 S.Ct. 698.

As in *Quercia,* the trial court's comments went far beyond innocuous "analysis" of the evidence. Although the trial court here did not explicitly say that Powell was lying, its statements were just as damaging. Upon the heels of Powell's testimony indicating that he did not intend to evade the process of the court, the trial court told the jury that the substance of Powell's testimony amounted to an admission of specific intent to do just that. The court failed to follow its opinion regarding Powell's testimony with an immediate reminder that the jury could disregard the court's opinion because the jury alone was responsible for determining the specific intent element. Accordingly, the trial court's statement was clearly erroneous under *Quercia.*

The Ninth Circuit authority cited by Respondent does not suggest otherwise. In *Rodriguez v. Marshall,* 125 F.3d 739 (9th Cir.1997), the trial judge noted that there had been conflicting evidence and highlighted questions the jurors might have wished to take into account when considering the testimony of one particular witness. The trial court also interspersed these comments with "cautionary admonitions" that it was the jury's responsibility to determine the facts using its own independent judgment. *Id.* at 749. We held that the trial judge's comments were permissible because he "repeatedly reminded members of the jury that they were to determine the facts of the case based on their own view of the evidence." *Id.* Similarly, in *United States v. James,* 576 F.2d

223 (9th Cir.1978), the trial court explained its view of the significance of certain testimony and the relationship between the different counts. *Id.* at 227–28. Unlike both *Rodriguez* and *James,* the trial judge here made a conclusive statement about the significance of Powell's testimony and failed to accompany his statement with any caveat or reminder that the jury was ultimately responsible for determining the intent element. *See People v. Rodriguez,* 42 Cal.3d 730, 230 Cal.Rptr. 667, 693 n. 10, 726 P.2d 113 (1986) (quoting text of challenged statement); *James,* 576 F.2d at 228 n. 5 (same); *see also Bradley v. United States,* 338 F.2d 493, 494–95 (9th Cir.1964) (holding erroneous instruction regarding admissions made by defendant to be nonprejudicial in light of accompanying cautionary language). The trial judge's later instruction—delivered four days after the damaging instruction at issue—did not explicitly refer to his earlier statement or otherwise alert the jury to the connection.[7] *See James,* 576 F.2d at 229(finding significant the later instruction that "I have made mention of the evidence but not in any manner for the purpose of suggesting to you whether or not I think Mr. James is guilty.... [A]ny view that I might have with respect to the guilt or innocence of Mr. James ... is altogether beside the point. Yours is the job of making that determination."). Consequently, the midtrial instruction was impermissible even under *Quercia* and its progeny.

**Conclusion**

Powell's conviction must be vacated because the court's midtrial instruction effectively directed the jury to find for the state on the specific intent element. Indeed, because specific intent was the only contested issue in the case, the trial court's

---

**7.** Even if the court had issued an adequate curative instruction, that would "not end the

inquiry." *James,* 576 F.2d at 229.

instruction essentially directed a verdict of guilty and thus clearly violated the principles articulated in *Carella* and *Sandstrom*. Moreover, *Sullivan* commands that harmless error review is inapplicable.

We therefore reverse the district court, vacate Powell's conviction and remand the case to the district court, with instructions to grant the writ of habeas corpus conditionally and to remand to the state court, directing that the State of California may retry Powell for failure to appear, if it is done within a reasonable period of time, consistent with the state's speedy trial requirements.

**REVERSED AND REMANDED.**