198 F.3d 734 (9th Cir. 1999)
 KIRK ANTHONY CONDE, Petitioner-Appellant,
v.
IRALEE HENRY, Warden; JAMES GOMEZ, Director of California Department of Corrections; BILL LOCKYER,[1] ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, Respondents-Appellees.
 No. 98-56445
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted September 16, 1999
Filed December 3, 1999
As Amended January 27, 2000
 
 [Copyrighted Material Omitted]
 COUNSEL: Carol Lysaght, Santa Monica, California, for the petitioner-appellant.
 Davis C. Cook, Deputy Attorney General, Los Angeles, California, for the respondents-appellees. ORDER
 Appeal from the United States District Court for the Central District of California
 Before: Betty B. Fletcher and Harry Pregerson, Circuit Judges, and Charles R. Weiner,[2] District Judge.
 OPINION
 B. FLETCHER, Circuit Judge:
 
 
 1
 Kirk Anthony Conde appeals the denial of his petition for a writ of habeas corpus. He seeks a writ on the grounds that his California state court conviction for kidnapping for the purposes of robbery was the result of a constitutionally deficient trial. The trial court (1) precluded the defendant from arguing that the elements of a robbery had not been met; (2) denied the defendant's motion to instruct the jury on the defense theory of the case; and (3) modified California's model jury instructions in a manner that reduced the prosecution's burden of proof. This court has jurisdiction pursuant to 28 U.S.C. S 2253. We reverse the district court and conditionally grant the writ of habeas corpus.
 
 FACTUAL BACKGROUND and PROCEDURAL HISTORY
 
 2
 The victim in this case, Margaret Schuss, was an assistant manager at a Sizzler restaurant. The petitioner, Conde, had previously worked at the restaurant. On June 13, 1988, after Schuss closed the Sizzler for the night, Conde and an accomplice followed her into the parking garage at her home. They accosted her in the garage, forced her back into her own car, and drove her away. After stopping at an unknown location to bind and blindfold Schuss, Conde demanded the restaurant's alarm code and safe combination, threatening to kill Schuss if anything went wrong. Schuss gave Conde the information, and Conde drove her for another 20-25 minutes, stopping the car at a second unknown location.
 
 
 3
 Conde left the car twice, the first time for 45 minutes, and the second time for 20-25 minutes. After returning a second time, Conde gave the victim her car keys and he left in another vehicle.
 
 
 4
 Approximately twelve thousand dollars was stolen from the restaurant safe on June 13, 1988. Petitioner Conde was convicted of kidnapping for robbery, residential burglary, and commercial burglary. He seeks a writ of habeas corpus challenging his conviction for kidnapping for robbery.
 
 Trial Proceedings
 
 5
 At trial, Conde advanced two theories of defense: first, he claimed that the victim had misidentified him as the abductor; second, he claimed that the prosecution had failed to prove kidnapping for robbery, since it could not show that he intended to rob Schuss.
 
 
 6
 A robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code S 211 (West 1999). It is undisputed that the only property taken was money from the restaurant safe. The parties disagree over whether Conde intended to take the money from the Sizzler in the immediate presence of Schuss.
 
 
 7
 Under California law, "a thing is in the immediate presence of a person, in respect to a robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." People v. Hayes, 52 Cal. 3d 577, 626-27 (1991) (citing, inter alia, Commonwealth v. Homer, 235 Mass. 526, 533 (Mass. 1920)). As an example of a taking by force or fear that would not be from a victim's immediate presence, Hayes offers the following:
 
 
 8
 A person might enter the victim's home and there, by the use of force or fear, compel the victim to reveal the combination of a safe located many miles away in the victim's office. The culprit at the vic tim's house could then relay the combination to a confederate waiting in or near the office, who could use it to open the safe and take its contents before the victim could reach the office or otherwise inter fere with the taking. In such a case, the criminals would have accomplished the taking by force or fear, and yet not have taken property from the person or immediate presence of the victim.
 
 
 9
 Id. at 627. This is, in essence, what Conde argues occurred.
 
 
 10
 At the conclusion of the prosecution's case, the trial court granted Conde's motion for acquittal on robbery and on kidnapping for extortion. In dismissing the robbery charge, the court stated that "I don't see a scintilla of evidence that there was an intent to take anything from [the victim]. The whole intent was to get her to go back to the Sizzler so that the suspects could get the money from the safe, not to take anything from her." It appears from the record that the trial court did not consider whether taking money from the Sizzler constituted a robbery of Schuss.
 
 
 11
 Conde then moved for acquittal on the charge of kidnapping for robbery, arguing that the kidnapping had been undertaken for burglary of the Sizzler restaurant and not for robbery of Schuss.
 
 
 12
 The court rejected this theory outright, and denied the motion. After reaffirming that Schuss had not been robbed, the court stated that "the robbery is from the Sizzler." This statement indicates that the trial judge may have confused robbery, which requires a taking from a person or her immediate presence, with commercial burglary, which may include taking from a restaurant.
 
 
 13
 Both the prosecutor and defense counsel agreed that the court should instruct the jury on the lesser included offense of simple kidnapping. The trial judge, however, refused to instruct on simple kidnapping because "in this case there is either akidnapping for robbery or there was nothing. There was no other intent for the kidnapping. There was nothing else it could have been." Defense counsel objected. After a later colloquy on the issue during which the defense counsel argued that this was a kidnapping for the purposes of burglary, not robbery, the judge replied, "I don't think so . . . If we are wrong, we are wrong."
 
 
 14
 Defense counsel, requesting clarification, asked whether the defense would "be precluded from arguing that there was no robbery since it was not from her person nor under her control." The judge answered in the affirmative that "it would be wrong to argue that."
 
 
 15
 Consistent with its belief that the victim had been kidnapped for robbery of the Sizzler, the trial court modified the specific intent element of the California pattern jury instructions for kidnapping for robbery by inserting the following emphasized language:
 
 
 16
 In order to prove [kidnapping to commit robbery], each of the following elements must be proved:
 
 
 17
 One, a person who is moved by the use of physical force.
 
 
 18
 Two, the movement of such person was caused with the specific intent to rob that person of money over which she had control, and the person causing such movement had such specific intent to rob when the movement commenced.
 
 
 19
 Three, the movement of such person was without that person's consent . . .
 
 
 20
 The judge rationalized this change as necessary to inform jurors that kidnapping Schuss "to rob Sizzler . .. is all right." The defense objected to the modification.
 
 
 21
 On June 22, 1989, the jury found Conde guilty of kidnapping for robbery, residential burglary, and commercial burglary. The trial court sentenced Conde to life imprisonment on the kidnapping for robbery count and to two additional years for use of a firearm. He was sentenced on the two burglary counts to four and two years. The burglary sentences were suspended pending service of the life sentence.
 
 Habeas Proceedings
 
 22
 Conde originally filed a petition for writ of habeas corpus on September 14, 1992. The district court ordered petitioner to exhaust state court remedies and held the matter open for a reasonable period. Petitioner exhausted state court remedies and filed a First Amended Petition on October 13, 1994. On September 29, 1995, the Magistrate Judge, to whom the case had been assigned for a report and recommendation, recommended that the court issue an order directing that judgment be entered granting a conditional writ of habeas corpus. On July 9, 1998, the district court denied the habeas petition.
 
 
 23
 On August 5, 1998, the district court issued a certificate of appealability that indicated that the specific issue to be addressed was "[w]hether the jury instructions were constitutionally deficient in describing the elements of the crime." The respondents contend that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits our review to the issue specified in the certificate of appealability. See 28 U.S.C. S 2253(c)(1)(A). We hold, however, that AEDPA's restriction does not apply where, as here, the original petition was filed before the effective date of AEDPA[3] but the notice of appeal from the denial of the petition was filed after the effective date. See Fuller v. Roe, 182 F.3d 699, 702-03 (9th Cir. 1999).
 
 DISCUSSION
 
 24
 This court reviews de novo a district court's decision to deny a S 2254 habeas petition. See Eslaminia v. White, 136 F.3d 1234, 1236 (9th Cir. 1998). We find that the district court erred, and we conditionally grant the writ of habeas corpus.
 
 Limitation on Closing Argument
 
 25
 The trial court violated Conde's right to counsel by precluding his attorney from arguing his theory of the defense in closing arguments, namely that the prosecution failed to prove a robbery or an intent to rob. The error was compounded by the prosecutor's closing argument, which contended that Conde did commit a robbery and therefore he did intend to rob.
 
 
 26
 In Herring v. New York, the Supreme Court set out the principle that the "closing argument for the defense is a basic element of the adversary fact finding process in a criminal trial." 422 U.S. 853, 858 (1975). Thus, "it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge." Id. Although a court may limit arguments that are unduly time consuming, "stray unduly from the mark, or otherwise impede the fair and orderly conduct," id. at 862, denying an accused the right to make final arguments on his theory of the defense denies him the right to assistance of counsel, see id. at 865.
 
 
 27
 We have held that a deficient closing argument that "lessened the Government's burden of persuading the jury" caused the "breakdown of our adversarial system " and required reversal. United States v. Swanson, 943 F.2d 1070, 1074 (9th Cir. 1991); see also United States v. Cronic, 466 U.S. 648, 659 (1984) ("if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable").
 
 
 28
 By preventing Conde from arguing that no robbery had occurred and that he lacked the requisite intent to rob, the trial court's order violated the defendant's fundamental right to assistance of counsel and right to present a defense, and it relieved the prosecution of its burden to prove its case beyond a reasonable doubt.
 
 
 29
 Failure to Instruct the Jury on Simple Kidnapping.
 
 
 30
 The trial court also erred when it denied Conde's request to instruct the jury on the crime of simple kidnapping.
 
 
 31
 It is well established that a criminal defendant is entitled to adequate instructions on the defense theory of the case. See United States v. Mason, 902 F.2d 1434, 1438 (9th Cir. 1990) ("A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence."); United States v. Lopez, 885 F.2d 1428, 1434 (9th Cir.1989) (same), overruled on other grounds, Schmuck v. United States, 489 U.S. 705 (1989); United States v. Kenny, 645 F.2d 1323, 1337 (9th Cir. 1981) (jury must be instructed as to defense theory of case, but exact language proposed by defendant need not be used).
 
 
 32
 Conde apparently had two inconsistent theories of the case: first, that he was innocent of all charges; second, that he was guilty of kidnapping for the purposes of burglary but not for robbery.[4] The judge rejected his second theory of defense out of hand, stating that "in this case there is either a kidnapping for robbery or there was nothing. There was noother intent for the kidnapping. There was nothing else it could have been." Based on this reasoning, the judge denied Conde's request to present evidence that he was innocent of any intent to rob and further denied Conde's request for instruction on simple kidnapping.
 
 
 33
 The district court ruled that even if such an instruction should have been given, "no constitutional violation is involved." We disagree and hold that it was error to deny Conde's request for instruction on simple kidnapping.
 
 
 34
 Modification of the Pattern Jury Instructions
 
 
 35
 The trial court also erred when it modified California's pattern jury instructions, thereby reducing the prosecutor's burden to show specific intent to take property from the victim or the immediate presence of the victim.
 
 
 36
 It is well established that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged." In re Winship, 397 U.S. 358, 364 (1970). Where a trial court fails "to properly instruct the jury regarding an element of the charged crime," the court commits "a constitutional error that deprives the defendant of due process." Hennessy v. Goldsmith, 929 F.2d 511, 514 (9th Cir. 1991).
 
 
 37
 The trial court modified the pattern instruction requiring "specific intent to rob [the victim]" so that it instead required "specific intent to rob [the victim] of money over which she had control." A reasonable interpretation of "money over which she had control" extends far beyond the victim's immediate presence to money that the victim keeps, for example, in the bank or other distant places.
 
 
 38
 The district court, in denying the writ of habeas, held that the modified jury instruction "did not have a tendency to eliminate the element of robbery complained of" and was an "innocuous change," citing the fact that another part of the jury instruction set out the "immediate presence " requirement. We disagree. The correct statement of the "immediate presence" requirement was buried in the "background definitions" part of the jury instruction, whereas the erroneous modification of the specific intent requirement appeared in the part of the instruction that set out the elements of the crime of kidnapping for robbery. The trial court's modification of the pattern jury instructions eviscerated the immediate presence requirement that a thing be "so within his reach, inspection, observation or control" that a victim "could, if not overcome by violence or prevented by fear, retain his possession of it," Hayes, 52 Cal. 3d at 626-27, thereby violating due process.
 
 Harmless Error
 
 39
 The respondents urge that if any errors were committed by the trial court, they were harmless errors and should escape reversal on habeas review. We disagree.
 
 
 40
 In Chapman v. California, the Supreme Court held that some constitutional errors in a criminal trial must be subjected to a "harmless error" test; 386 U.S. 18, 22-24 (1967), that is, an examination of "whether the guilty verdict actually rendered in this trial was surely unattributable to the error," Sullivan v. Louisiana, 508 U.S. 275, 279 (1993). Harmless error analysis ordinarily must be applied to trial errors, including a jury instruction that omits an element of the offense. See Neder v. United States, 119 S.Ct. 1827, 1833 (1999)
 
 
 41
 However, we do not apply harmless error review in "cases that contain a `defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " Neder, 119 S.Ct. at 1833 (quoting Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991)). In Fulminante, the Supreme Court held that constitutional violations that are not subject to harmless error analysis include, inter alia, "total deprivation of the right to counsel at trial;" a judge who was not impartial; "unlawful exclusion of members of the defendant's race from a grand jury;" right to self representation at trial; and the right to a public trial. 499 U.S. at 309-10 (citations omitted). See also Sullivan , 508 U.S. at 280 (where the trial court gave an unconstitutional jury instruction on reasonable doubt, "there has been no jury verdict within the meaning of the Sixth Amendment,[and] the entire premise of Chapman [harmless error] review is simply absent").
 
 
 42
 Here, the trial court improperly precluded Conde's attorney from making closing argument explaining the defendant's theory of the case, it refused to instruct the jury on the defendant's theory, and, over the defendant's objection, it gave jury instructions that did not require that the jury find every element of the offense. Together, these errors deprived the petitioner of effective assistance of counsel, due process and trial by jury on every element of the charged crime. The very framework within which the trial proceeded on the kidnapping charge prevented the defendant from presenting his theory of the defense and prevented the jury from determining whether all of the elements of kidnapping for robbery had been proved beyond a reasonable doubt. We conclude that Conde was deprived of a fair trial on the kidnapping charge.
 
 
 43
 Were we to apply the harmless error test, however, we would conclude that the errors here were not harmless. If the court had not improperly limited the defense's closing argument and had correctly instructed the jury on Conde's theory of the defense and on the immediate presence requirement, as to which the evidence was in conflict, the jury may very well have concluded that the prosecution failed to prove that Conde intended to rob Schuss.[5]See Neder, 119 S.Ct. at 1838 ("If at the end of [an] examination [of the record] the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error -for example, where the defendant contested the omitted element and raised evidence sufficient to support a contraryfinding -it should not find the error harmless.").
 
 
 44
 We therefore conditionally grant the writ of habeas corpus. We vacate Conde's conviction of kidnapping for robbery and remand to the district court. The district court shall remand to the state court, directing that the State of California may retry the defendant for kidnapping for robbery if it is done within a reasonable period of time, consistent with the state's speedy trial requirements.
 
 
 45
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 Bill Lockyer is substituted for his predecessor, Daniel E. Lungren, as Attorney General for the State of California. Fed. R. App. P. 43(c)(2).
 
 
 [2]
 Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.
 
 
 [3]
 The original petition was filed in 1992. The effective date of AEDPA was April 24, 1996.
 
 
 [4]
 We note that the respondents contend that Conde's "single" theory of the defense was innocence. The record does not support this contention. On the contrary, the record reflects that petitioner's counsel argued on several occasions that his client lacked intent to rob.
 
 
 [5]
 Conde separately argues that the prosecution failed to present sufficient evidence about Conde's intent to take money from the restaurant in the immediate presence of the victim to support a conviction for kidnapping for robbery. Unlike the arguments set out above, this contention fails. The standard to be applied in reviewing the sufficiency of evidence to support a conviction is "whether, considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt." Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997) ( citing, inter alia, Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The prosecution presented evidence tending to show that the burglary of the Sizzler occurred within the immediate presence of the victim and thus might have been a completed robbery. Considering the evidence in the light most favorable to the prosecution, a rational juror could find that the prosecution met its burden of showing that Conde intended to rob Schuss.