Michael Jerome **POWELL,**
Petitioner–Appellant,

v.

George M. **GALAZA,** Warden,
Respondent Appellee.

No. 01–15195.

United States Court of Appeals,
Ninth Circuit.

May 6, 2003.

Alexandra McClure, Assistant Federal Public Defender, San Francisco, CA, for the petitioner-appellant.

John R. Vance, Jr., Deputy Attorney General, San Francisco, CA, for the respondent-appellee.

On Remand from the United States Supreme Court.*

Before B. FLETCHER, BOOCHEVER and FISHER, Circuit Judges.

## OPINION

FISHER, Circuit Judge.

In the middle of Michael Jerome Powell's trial for failure to appear at a sentencing hearing, the trial court instructed the jury that Powell's own testimony satisfied the specific intent element of the crime. Such an instruction is impermissible under the principles of *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989), and *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); and the reasoning of *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), dictates that harmless error review is inapplicable. Because the decision of the California Court of Appeal is contrary to the reasoning and the result of these controlling Supreme Court authorities, we reverse the district court's denial of the petition for a writ of habeas corpus.

## Factual and Procedural Background

Powell is serving a sentence of 29 years to life in prison for failing to appear at a sentencing hearing. Having pled guilty to possession of cocaine with intent to sell, Powell faced a maximum jail term of four years. Powell testified that, although he was willing to serve his prison sentence, he

---

* The opinion filed on March 4, 2002, *Powell v. Galaza*, 282 F.3d 1089 (9th Cir.2002), was vacated by the Supreme Court on November 12, 2002. *Galaza v. Powell*, —— U.S. ——, 123 S.Ct. 549, 154 L.Ed.2d 422 (2002).

skipped his sentencing hearing because he feared he would be killed in prison.

In February 1994, Powell approached the San Francisco police voluntarily with information about the murder of two-year-old Bianca Robinson. Bianca had been riding in the back of a car driven by Kelly Hollimon when Emanuel Davis, in a car with two friends, shot at Hollimon but killed Bianca instead. According to Powell, Davis and his friends are members of the Black Guerilla Family ("BGF"), a known gang. In a taped statement, Powell told the authorities that he had witnessed a fight between Hollimon and Davis a few days before the shooting, during which Hollimon severely injured one of Davis' friends. Powell told the homicide investigators that he believed Davis and his friends wanted to take revenge against Hollimon.

Shortly thereafter, Powell was arrested in Marin County for possession of cocaine with intent to sell, in violation of California Health & Safety Code § 11351.5. In late November or early December 1994, while Powell was out on bail, he reluctantly testified in the Bianca Robinson murder trial. Powell expressed concern that he might face retaliation, but he elected to testify despite his anxiety.

Powell pled guilty to his felony possession charge on November 23, 1994 and was scheduled to be sentenced on February 23, 1995, facing a maximum sentence of four years. He failed to appear, however, at his sentencing hearing. One year later, he was arrested, charged with failure to appear in violation of California Penal Code § 1320.5 and convicted by a jury. The state court sentenced him to 29 years to life in prison—four years for the underly-

ing drug offense and 25 years to life because his failure to appear was his third-strike felony.[1]

Under California law, the crime of failure to appear has two elements: (1) willful failure to appear as required and (2) specific intent to evade the process of the court. Cal.Penal Code § 1320.5; see People v. Forrester, 30 Cal.App.4th 1697, 37 Cal.Rptr.2d 19, 21 (1994). Powell's defense was that he did not specifically intend to evade the process of the court.

At the preliminary hearing for his failure-to-appear charge, Powell's sister and wife testified that Powell received death threats in early January 1995—the number 187 (the California Penal Code section for murder) appeared repeatedly on his pager and the phone number for a mortuary appeared on his pager on one occasion. Powell's sister testified that around this time (between December 1994 and March or April 1995), Powell "looked like he was afraid ... for his life," that he moved out of their father's home, refused to tell her or their father where he was living and that he urged them to stay away from his father's neighborhood. Powell's wife testified that an unidentified man, screaming "something about testifying," shot at her and Powell while they were in the car. The Powells did not report any of these incidents to the police.

Prior to the jury trial for failing to appear, the court ruled that Powell could not testify about his reason for failing to appear at the sentencing hearing. The court reasoned that because Powell was precluded from presenting a necessity defense, he should also be precluded from introducing evidence of his state of mind, as that evidence merely "boil[ed] down to a statement of necessity."[2]

1. Powell contends that his sentence constitutes cruel and unusual punishment. We de-

cline to reach this issue because we vacate his conviction on another ground.

2. The trial court's ruling that the necessity

Nonetheless, on direct examination, Powell testified that he was "prepared to get four years state prison" if he pled guilty to the drug charge and that he was willing to serve that sentence. He further testified,

> The only thing I was really worried about was the BGF member that was going to kill me when I got to San Quentin. That was the only thing I was worried about. That's what we [Powell and his probation officer] discussed in full length.

The prosecution objected that this testimony violated the court's pretrial ruling, but the court permitted Powell to continue. Powell further stated, "we had been shot at and everything already, and I already knew what was coming to me while I was—you know, trying to kill me. I got scared for my life. That's the truth." Powell also testified that he was not "trying to get away from anything that ... the court was going to do to [him]" and that he was not "trying to avoid the court's sentence." The prosecutor subjected Powell to scathing cross-examination on this subject, filling 23 transcript pages. At the end of the day's testimony, the court admonished Powell and his attorney for violating the pretrial order, instructed the jury that the

necessity defense was not available in this case and—in terms that are at issue here—further instructed the jury that Powell's testimony did not negate the specific intent element:

> The other thing about it is, it doesn't relate in the slightest to the subject of intent. In fact, if you look carefully and logically at what has been said here about why the defendant didn't come to court, it doesn't vindicate or eliminate the intention to evade the court process. In fact, it starts with an admission that he intended to evade the court process.
>
> So, it doesn't eliminate the mental element of this offense either. What he's saying by his repeated statements against my order is that he didn't come to court because he wanted to evade the process of the court, because he knew in all reason that he was going to be sent to prison. And that's what the element or the intentional element of this offense is about: Intent to evade the court process.

The court also forbade Powell's attorney from revisiting the issue on redirect examination or presenting any additional evidence to rehabilitate Powell.[3]

---

defense was unavailable to Powell is not before us. In an unpublished opinion, the California Court of Appeal affirmed the trial court's decision to deny Powell the necessity defense. The appellate court explained that, while it was unclear whether a defendant charged with failure to appear could invoke the necessity defense in the first instance, Powell certainly could not do so because he failed to satisfy the following required elements:

> (1) [A] specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; (2)[N]o time for a complaint to the authorities or ... a history of futile complaints which make any result from such complaints illusory; (3)[N]o time or opportunity to resort to the courts ...

and (5) The [defendant] immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

*People v. Powell*, Nos. A077303, A077304 (Cal. Ct.App. Oct. 23, 1998) (internal quotations omitted) (citing *People v. Lovercamp*, 43 Cal. App.3d 823, 118 Cal.Rptr. 110, 115 (1974) (holding that necessity is possible defense to charge of escape from prison)).

**3.** Because we vacate Powell's conviction on the ground that the trial court's midtrial instruction violated the Fourteenth Amendment, we decline to reach Powell's claim that the trial court violated his Sixth Amendment right to present a defense by refusing to allow Powell to be rehabilitated on redirect examination.

Four days later, at the end of the trial, the court further charged the jury:

> I have not intended by anything I have said or done, or by any questions that I may have asked, or by any ruling I may have made to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness.
>
> If anything I have done or said has seemed to so indicate, you will disregard it and form your own conclusion....
>
> ....
>
> Whether some instructions apply will depend upon what you find to be the facts. Disregard any instruction which applies to facts determined by you not to exist. Do not conclude that because an instruction has been given that I am expressing an opinion as to the facts.

Although the parties have not informed us, nor does the record reflect, whether the court gave an instruction defining specific intent, the court did give the jury the following instruction:

> If you find that the defendant willfully failed to appear within 14 days of his assigned appearance date, you are permitted but are not required to infer therefrom that defendant intended to evade the process of the court.

On direct review of Powell's conviction, the California Court of Appeal cursorily rejected Powell's objection that the midtrial instruction was unfair and prejudicial, stating that "Powell's evidence, including that which he was precluded from introducing, did not support a defense of necessity and did not negate the element of intent to evade the court process. It follows that no direct prejudice resulted from so informing the jury." *People v. Powell, supra.* The court went on to hold that "the court's statements, even if prejudicial, could not have affected the outcome of the trial. It follows that the error, if any, was harmless." *Id.* The Court of Appeal de-

nied Powell's petition for rehearing, and the California Supreme Court denied Powell's Petition for Review without opinion. Powell sought federal habeas relief, and the district court denied his amended petition on December 13, 2000. Powell timely appealed, and after this court reversed the district court and remanded with instructions to grant the writ, *Powell v. Galaza,* 282 F.3d 1089 (9th Cir.2002), the Supreme Court vacated our opinion and remanded for further consideration in light of its decision in *Early v. Packer,* 537 U.S. 3, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002). *Galaza v. Powell,* —— U.S. ——, 123 S.Ct. 549, 154 L.Ed.2d 422 (2002). Upon careful consideration of the principles enunciated in *Packer,* we again reverse the district court and remand with instructions to grant the writ of habeas corpus.

## Standard of Review

■■■ We review de novo a district court's decision to deny a 28 U.S.C. § 2254 habeas petition. *Lockhart v. Terhune,* 250 F.3d 1223, 1228 (9th Cir.2001); *Charles v. Hickman,* 228 F.3d 981, 985 (9th Cir.2000). Because Powell's petition was filed after April 24, 1996, it is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lockhart,* 250 F.3d at 1228. Therefore, the petition may be granted only if:

> the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As the Supreme Court most recently put it, "a state court

decision is 'contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Lockyer v. Andrade,* ─── U.S. ───, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). The state court need not cite or even be aware of the governing Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Packer,* 123 S.Ct. at 365. In determining whether a state court decision is contrary to or an unreasonable application of federal law, we will examine the "last reasoned decision of [a] state court as the basis of the state court's judgment." *Franklin v. Johnson,* 290 F.3d 1223, 1233 n. 3 (9th Cir.2002).

## Analysis

### A. The Midtrial Instruction

█ The Supreme Court's holdings in *Carella v. California,* 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989), and *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), provide the controlling authority here. Because the California Court of Appeal failed to apply the correct analysis as determined by *Carella* and *Sandstrom* and reached a result that contradicts the reasoning and result of those cases, its decision was contrary to federal law. *Packer,* 123 S.Ct. at 365. The trial court's instruction improperly removed the element of specific intent to evade the court process—the only contested issue—from the jury's consideration and in effect commanded a directed verdict for the state. Under *Carella* and *Sandstrom,* this was error.

In *Carella,* the Supreme Court reiterated its rule that a mandatory presumption-a specific instruction that "both alone and in the context of the overall charge, could have been understood by reasonable jurors to require them to find the presumed fact if the State proves certain predicate facts"—violates the Fourteenth Amendment because it "directly foreclose[s] independent jury consideration of whether the facts proved establish[ ] certain elements of [the charged offense] ... and relieve[s] the State of its burden of ... proving by evidence every essential element of [the] crime beyond a reasonable doubt." 491 U.S. at 265–66, 109 S.Ct. 2419 (citing *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)); *accord Sandstrom,* 442 U.S. at 521, 99 S.Ct. 2450 (holding unconstitutional instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" because the jury could have interpreted it as either a burden-shifting or conclusive presumption).

Here, the trial court told the jury that Powell's testimony was "an admission that he intended to evade the court process," and that

[w]hat [Powell is] saying by his repeated statements against [the court's] order is that he didn't come to court because he wanted to evade the process of the court, because he knew in all reason that he was going to be sent to prison. And that's what ... the intentional element of this offense is all about: Intent to evade the court process.

This instruction went beyond the mandatory presumption instructions found unconstitutional in *Carella* and *Sandstrom.* The jury was not merely instructed to find specific intent to evade the process of the court once it found certain predicate facts.

Rather, the court stated that Powell's testimony "starts with an admission that he intended to evade the process of the court." [4] The court thus in effect instructed the jury that the specific intent element had been satisfied. Moreover, the court's later instructions were inadequate to undo the damage caused by the court's earlier definitive statement. The court's qualification that "I have not intended by anything I have said or done ... to intimate or suggest what you should find to be the facts" was too general and too late to ensure that the jurors would entirely disregard the court's instruction that the only contested issue in the case should be decided against Powell. Therefore, the midtrial instruction clearly violated the principles enunciated in *Carella* and *Sandstrom*.

Respondent urges us to analyze the judge's midtrial instruction under *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). The instruction, however, is more appropriately analyzed under *Carella* than *Quercia*, which addressed the proper limits on a trial judge's comments to the jury. *Quercia* is distinguishable because the court here was not merely commenting on the evidence or making passing remarks during the course of the trial. Rather, as the court itself recognized, it was instructing the jury about the specific intent element.[5] Accordingly, the trial judge's statement should be assessed under the standards employed in scrutinizing other jury instructions, and *Carella* and *Sandstrom*,

rather than *Quercia*, constitute the correct controlling authority.

In any event, the state court decision is contrary to *Quercia* and its progeny. In *Quercia*, after the trial court charged the jury, it stated:

And now I am going to tell you what I think of the defendant's testimony. You may have noticed, Mr. Foreman and gentleman, that he wiped his hands during his testimony. It is rather a curious thing, but that is almost always an indication of lying.... I think that every single word that man said, except when he agreed with the Government's testimony, was a lie.

Now, that opinion is an opinion of evidence and is not binding on you, and if you don't agree with it, it is your duty to find him not guilty.

*Id.* at 468–469, 53 S.Ct. 698. The Supreme Court stated that a trial judge "may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination." *Id.* at 469, 53 S.Ct. 698. The Court reversed the defendant's conviction because the trial judge added to the evidence and "put his own experience, with all the weight that could be attached to it, in the scale against the accused." *Id.* at 471, 53 S.Ct. 698. The Court also rejected the argument that the latter portion of the statement cured the error, because the judge did not withdraw his opinion and it was "of a sort most likely to remain firmly lodged in the memory of the jury and to

4. Significantly, the court began by telling the jury that Powell's testimony did not "relate in the slightest to the subject of intent," but then proceeded to convert the testimony into an "admission" of intent.

5. Immediately prior to issuing the contested instruction, the court suggested that "maybe in the process of hoisting[Powell and his attorney] on their own Pitards I would contemplate the possibility of instructing the jury on

necessity and on the issues of the question of intent at this juncture so they don't go home with some misimpression of what's going on here." After the prosecutor agreed, the judge directed that the jury be brought back in so that he could "instruct them." As the court itself characterized what it was about to do as an instruction, we decline to assess the language as mere comment.

excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." *Id.* at 472, 53 S.Ct. 698.

As in *Quercia,* the trial court's comments here went far beyond innocuous "analysis" of the evidence. Although the trial court did not say explicitly that Powell was lying, its statements were just as damaging. Upon the heels of Powell's testimony indicating that he did not intend to evade the process of the court, the trial court told the jury that the substance of Powell's testimony amounted to an admission of specific intent to do just that. The court did not follow its opinion regarding Powell's testimony with an immediate reminder that the jury could disregard the court's opinion because the jury alone was responsible for determining the specific intent element. Accordingly, the trial court's statement was contrary to *Quercia.*[6]

The Ninth Circuit authority Respondent cites does not suggest otherwise. In *Rodriguez v. Marshall,* 125 F.3d 739, 748–49 n. 12 (9th Cir.1997), *overruled in part on other grounds by Payton v. Woodford,* 299 F.3d 815 (9th Cir.2002), the trial judge noted that there had been conflicting evidence and highlighted questions the jurors might have wished to take into account when considering the testimony of one particular witness. The trial court also interspersed these comments with "cautionary admonitions" that it was the jury's responsibility to determine the facts using its own independent judgment. *Id.* at 749. We held that the trial judge's comments were permissible because he "repeatedly reminded members of the jury that they were to determine the facts of the case

based on their own view of the evidence." *Id.* Similarly, in *United States v. James,* 576 F.2d 223 (9th Cir.1978), the trial court explained its views of the significance of certain testimony and the relationship between the different counts. *Id.* at 227–228.

Unlike both *Rodriguez* and *James,* the trial judge here made a conclusive statement about the significance of Powell's testimony and failed to accompany his statement with any caveat or reminder that the jury was ultimately responsible for determining the intent element. *See People v. Rodriguez,* 42 Cal.3d 730, 230 Cal.Rptr. 667, 726 P.2d 113, 138 n.10 (1986) (quoting text of challenged statement); *James,* 576 F.2d at 228 n.5 (same); *see also Bradley v. United States,* 338 F.2d 493, 494–95 (9th Cir.1964) (holding erroneous instruction regarding admissions made by defendant to be nonprejudicial in light of accompanying cautionary language). The trial judge's later instruction—delivered four days after the damaging instruction at issue—did not explicitly refer to his earlier statement or otherwise alert the jury to the connection.[7] *See James,* 576 F.2d at 229 (finding significant the later instruction that "I have made mention of the evidence but not in any manner for the purpose of suggesting to you whether or not I think Mr. James is guilty.... [A]ny view that I might have with respect to the guilt or innocence of Mr. James ... is altogether beside the point. Yours is the job of making that determination."). Consequently, the midtrial instruction was impermissible under *Quercia* and its progeny, as well as under *Carella* and *Sandstrom.*

---

**6.** This would be the case even if the court had followed its improper remarks with a curative instruction, because under *Quercia* such an instruction would have been insufficient to remedy the prejudice created by the court's error. *Id.* at 472, 53 S.Ct. 698.

**7.** Even if the court had issued an adequate curative instruction, that would "not end the inquiry." *James,* 576 F.2d at 229.

## B. Harmless Error

We further hold that harmless error review is inapplicable. The Supreme Court has recognized that "some constitutional errors require reversal without regard to the evidence in the particular case [because they] necessarily render a trial fundamentally unfair." *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (stating that "harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury"), *overruled in part on other grounds by Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (rejecting harmless error formulation of *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), for cases on collateral review). This principle applies on habeas review as well as on direct review. *See Conde v. Henry,* 198 F.3d 734, 741 (9th Cir.1999) (refusing to apply harmless error review in consideration of petition for writ of habeas corpus where structural errors rendered trial fundamentally unfair).

The Court in *Carella* explained that a mandatory-presumption instruction may be reviewed for harmless error because it is not equivalent to a directed verdict for the state—the jury is still required to find the predicate facts underlying each element beyond a reasonable doubt. *Carella,* 491 U.S. at 266, 109 S.Ct. 2419; *see also Neder v. United States,* 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (holding that failure to instruct the jury on a single element of the offense is reviewable for harmless error because the error "did not vitiat[e] all the jury's findings"); *Rose,* 478 U.S. at 579–80, 106 S.Ct. 3101 (holding that instruction that impermissibly shifts burden of proof on malice element is subject to harmless error review). The instructional errors at issue in Carella, *Neder* and *Rose* were subject to harmless error review precisely because the juries in those cases made other factual findings that were untouched by the court's errors.

The instruction here, however, is effectively the same as a directed verdict for the state, because the judge instructed the jury that the only contested element of the offense had been satisfied. In contrast to Carella, *Neder* and *Rose,* there were no other disputed facts or elements for the jury to decide. The judge's instruction left the jury with no choice but to return a guilty verdict, resulting in the sort of error whose absence in *Carella* was critical to the Court's decision to review for harmlessness. *See Carella,* 491 U.S. at 266, 109 S.Ct. 2419 (explaining that *Sandstrom* error is not equivalent to a directed verdict, and is therefore subject to harmless-error analysis, because a jury instructed to presume malice from predicate facts "still must find the existence of those facts beyond a reasonable doubt," and "[i]n many cases, the predicate facts conclusively establish intent"); *see also Sullivan v. Louisiana,* 508 U.S. 275, 280–81, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (explaining that mandatory presumption instruction on one element may be subject to harmless error analysis because the jury must still find the predicate facts, and "[a] reviewing court may thus be able to conclude that the presumption played no significant role in the finding of guilt beyond a reasonable doubt").

■ An instruction that the only contested element has been satisfied cannot be reviewed for harmless error because the wrong entity-the judge rather than the jury-is responsible for rendering the verdict. *See Rose,* 478 U.S. at 578, 106 S.Ct. 3101; *see also Neder,* 527 U.S. at 17 n. 2, 119 S.Ct. 1827 (affirming *Rose* for the proposition that a directed verdict is not subject to harmless error review). That is, the guilty verdict cannot be said to emanate from the jury because the judge

has made the one factual finding on which the verdict rests. In such circumstances, we cannot say that "the guilty verdict actually rendered ... was surely unattributable to the error." *Sullivan*, 508 U.S. at 279, 113 S.Ct. 2078. Rather, "[t]he most that an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent a constitutional error. That is not enough." *Id.* at 280, 113 S.Ct. 2078 (holding that defective reasonable doubt instruction will not be reviewed for harmless error because the jury never actually rendered a guilty verdict and because instruction constituted structural error); *cf. Conde*, 198 F.3d at 740–41 (refusing to apply harmless error analysis where failure to allow closing argument on defense theory, refusal to instruct jury on that theory and erroneous instruction combined to deprive defendant of fair trial). Indeed, the Supreme Court has instructed that "[t]he Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal." *Sullivan*, 508 U.S. at 280, 113 S.Ct. 2078. Because "there has been no jury verdict within the meaning of the Sixth Amendment," harmless error review is inapplicable here. *Id.* The California Court of Appeal thus "applie[d] a rule that contradicts the governing law" set forth in *Sullivan* when it reviewed the judge's instructional error for harmlessness. *Packer*, 123 S.Ct. at 365 (internal quotation marks omitted). Its decision therefore was contrary to clearly established federal law within the meaning of § 2254(d). *Id.*

### Conclusion

Powell's conviction must be vacated because the court's midtrial instruction effectively directed the jury to find for the state on the specific intent element. Indeed, because specific intent was the only contested issue in the case, the trial court's instruction essentially directed a verdict of guilty and thus clearly violated the principles articulated in *Carella* and *Sandstrom*. Moreover, *Sullivan* establishes that harmless error review is inapplicable. Because the state court's denial of relief contradicts the reasoning and result of *Carella, Sandstrom* and *Sullivan*, it is contrary to clearly established federal law, and habeas relief is warranted.

We therefore reverse the district court, vacate Powell's conviction and remand the case to the district court, with instructions to grant the writ of habeas corpus conditionally and to remand to the state court, directing that the State of California may retry Powell for failure to appear, if it is done within a reasonable period of time, consistent with the state's speedy trial requirements.

**REVERSED AND REMANDED.**