**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gabriel ORTIZ–ROMERO,**
**Defendant–Appellant.**

No. 06–50056.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 2007.

Filed Sept. 12, 2008.

William P. Cole, Office of the U.S. Attorney, San Diego, CA, for Plaintiff–Appellee.

Steven F. Hubachek, Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant–Appellant.

Before: PAEZ and RAWLINSON, Circuit Judges, and CONLON,* District Judge.

## MEMORANDUM **

Gabriel Ortiz–Romero was convicted of numerous counts of bringing aliens to the United States and transporting undocumented aliens within the United States in violation of 8 U.S.C. § 1324(a). He appeals his convictions on various grounds.

### 1. Eye-witness identification

We assume without deciding that the identification given at the scene of the accident and the photo array presentations several days after the accident were impermissibly suggestive and that the district court erred by admitting the subsequent identification testimony at trial.[1] *See United States v. Montgomery,* 150 F.3d 983, 992–93 (9th Cir.1998) (discussing standard for admission). Nevertheless, any error was harmless due to the substantial evidence of Ortiz–Romero's pres-

---

* The Honorable Suzanne B. Conlon, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Because we assume error, we do not address whether, as Ortiz–Romero contends, the Government bears the burden of demonstrating the reliability of the in-court identifications by clear and convincing evidence. *See Cossel v. Miller,* 229 F.3d 649, 655 (7th Cir. 2000).

ence. *See, e.g., United States v. Simoy,* 998 F.2d 751, 753 n. 1 (9th Cir.1993).

## 2. *Daubert* error

■ Similarly, although the district court erred by not making an express finding that Officer Vandiver's challenged expert testimony was reliable, the error was harmless due to Officer Vandiver's qualifications and the other, admissible testimony of accident reconstruction and blood pattern evidence. *See United States v. Jawara,* 474 F.3d 565, 583 (9th Cir.2007).

## 3. Instructional error under *Lopez*

■ The Government concedes that the jury instructions in this case were erroneous, as to the "bringing to" counts, because the instructions mischaracterized the termination point of a "bringing to" offense. *See United States v. Lopez,* 484 F.3d 1186, 1191 & n. 7 (9th Cir.2007) (en banc) ("reject[ing] the 'immediate destination' (or ultimate destination) test set forth in *United States v. Ramirez–Martinez* [273 F.3d 903 (9th Cir.2001) ]"). Nevertheless, the error was harmless.[2]

The evidence clearly established that the aliens were not dropped off at a point within the United States—terminating the "bringing to" offense—prior to Ortiz–Romero's actions. *See Lopez,* 484 F.3d at 1191. Rather, the aliens' guide stayed with them and directed them into the van driven by Ortiz–Romero. Any rational trier of fact would have concluded that Ortiz–Romero acted to aid and abet the "bringing to" offense prior to the completion of that offense, due to the apparently coordinated effort. The dissent cites our

recent case, *United States v. Hernandez–Orellana,* 539 F.3d 994, 1005–06 (9th Cir. 2008) to support a contrary conclusion. However, in that case, no evidence linked the defendant to the planning activities in Mexico. *See id.* By comparison in this case, the guide linked Ortiz–Romero's involvement to the activities in Mexico.

## 4. Instructional error under *Munoz*

■ The Government also concedes that the jury instructions in this case, as to the "bringing to" counts, were erroneous under *United States v. Munoz,* 412 F.3d 1043, 1046–47 (9th Cir.2005). Nevertheless, the error was clearly harmless. We agree with the Government's statement that "the evidence overwhelmingly established the pecuniary motive" and that any rational juror would have concluded that Ortiz–Romero acted with the required intent as an aider and abettor to financially benefit a principal to the crime.

## 5. Prosecutorial misconduct

■ Finally, we reject Ortiz–Romero's claim of prosecutorial misconduct in closing arguments, a claim which was not raised below and is therefore reviewed for plain error. *United States v. Washington,* 462 F.3d 1124, 1136 (9th Cir.2006). Under the circumstances of this case, the prosecutor's remarks did not constitute impermissible vouching, nor. did they misconstrue the law regarding the requirement that the jury not speculate, but base its deliberations on the evidence presented, or the lack of evidence. Moreover, even if there was any marginal impropriety in the

---

**2.** We reject Ortiz–Romero's argument that the error conceded by the Government is structural. *See Neder v. United States,* 527 U.S. 1, 12–13, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) ("[T]his Court has applied harmless-error review in cases where the jury did not render a 'complete verdict' on every element of the

offense . . . ."); *cf. Powell v. Galaza,* 328 F.3d 558, 566 (9th Cir.2003) ("The instructional errors at issue in *Carella, Neder* and *Rose* were subject to harmless error review precisely because the juries in those cases made other factual findings that were untouched by the court's errors.").

prosecutor's remarks, the error was not plain.

**AFFIRMED.**

PAEZ, J., dissenting in part:

I respectfully dissent from the court's holding that the instructional error under *United States v. Lopez*, 484 F.3d 1186 (9th Cir.2007) (en banc), was harmless.

We have found jury-instruction errors to be harmless where the erroneous instruction went to an element which was "uncontested and supported by overwhelming evidence." *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1197 (9th Cir.2000) (en banc). Here, however, the question of whether Ortiz–Romero acted before the "bringing to" crime was complete is contested and involves substantial, conflicting evidence.

The relevant facts are these: the guide led the aliens on a two-day walk from Mexico to a location within the United States where they awaited further transportation. The guide was continuing on with the group as a passenger; his ultimate destination was Ohio. The aliens and the guide hid for several hours. Eventually, a car came by, asked how many were in the group, and left. Another car came by and told the group to keep waiting. A half-hour later, a car and a van—allegedly driven by Ortiz–Romero—picked up the group. The guide rode in the van with Ortiz–Romero and approximately ten of the aliens.

In the Government's view, it is pivotal that, unlike in *Lopez*, where the guide abandoned his group to await transportation at a point inside the United States, the guide's involvement here continued at least until he and the aliens entered the van. The Government argues that this shows that the guide continued to "transport" the aliens until he had shepherded them into the van, and that the guide's "bringing to" offense thereby extended at least until the point that he and the aliens entered the van. Because Ortiz–Romero began driving the van to the location and waited in the van while the group ran from its hiding place, the Government argues that Ortiz–Romero's acts in furtherance of the crime occurred before the "bringing to" offense was complete.

To the contrary, Ortiz–Romero argues that the guide's crime was complete when he delivered the group to its pick-up point in the desert, near the side of the road. After that point, the guide was present merely as a fellow traveler, not as a leader or transporter. Because the group arrived at the pick-up point several hours before the van arrived at the scene, Ortiz–Romero argues that there is no evidence (or, at least, not overwhelming evidence) that he had any part in transporting the aliens before the guide's crime of "bringing to" was completed.

The dispute between the parties, in considering whether Ortiz–Romero "acted before the drop-off to aid and abet the extraterritorial offense," *Lopez*, 484 F.3d at 1198–99, is at what point the "drop-off" occurred. This point is essential, because there is no evidence to connect Ortiz–Romero to the broader smuggling scheme, and, therefore, like the driver in *Lopez*, Ortiz–Romero could have been recruited into the scheme at the "last minute"—i.e., in the hours between the aliens' arrival at the side of the road and the arrival of the van to pick them up. Moreover, the guide's presence, by itself, is insufficient to establish *Lopez*'s connection to the smuggling activities in Mexico. *See Lopez*, 484 F.3d at 1200 (noting that "Lopez was contacted on the day she transported the[aliens] only after the aliens were already in the country and the plan for the first person to pick them up had [failed]");

**704**

see also *United States v. Hernandez–Orellana*, 539 F.3d 994, 1006 (9th Cir.2008) ("The evidence ... establishes no explicit extra-territorial connection as *Lopez* requires.").

Ortiz–Romero argues that the "drop-off" happened when the group stopped walking and began waiting near the road. After that point, according to Ortiz–Romero, the guide was a mere fellow traveler. The Government, on the other hand, argues that the "drop-off" was actually a "hand-off," and that the aliens were not dropped off until they were delivered into the van by the guide. This is a factual dispute. The Government's theory is legally tenable in light of *Lopez*, but is not mandated by *Lopez*. The key is whether, during the period that the group waited to be picked up, the guide was acting as a criminal transporter or as a passenger. That was a determination for the jury. Because of the district court's erroneous instruction, however, the jury was not presented with that question. Moreover, the error is not harmless, because the evidence is hardly so one-sided that rational jurors could not disagree. A juror might well agree with Ortiz–Romero that the guide's testimony showed he "dropped off" the aliens when they reached the pick-up point, and that, from that point on, the guide was present merely because he was waiting for his own ride to Ohio.

In sum, it is not "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Gracidas–Ulibarry*, 231 F.3d at 1197 (internal quotation marks omitted). Accordingly, I would reverse Ortiz–Romero's convictions on counts 1, 3, 5, 7, 9, 11, 13 and 16 (the "bringing to" counts) and remand for a new trial on those counts.